In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1405

ERIC FLYNN GROSS,

*Plaintiff-Appellant,*

*v.*

PPG INDUSTRIES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07-CV-982—**J.P. Stadtmueller**, *Judge.*

ARGUED SEPTEMBER 16, 2010—DECIDED MARCH 7, 2011

Before CUDAHY, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Eric Flynn Gross sued his employer, PPG Industries, Inc., alleging that PPG's handling of his military deployment violated the Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. §§ 4301-35. As relevant here, Gross alleged that PPG unlawfully calculated his pay while he was deployed and refused to rectify its error. Gross and PPG filed cross-motions for summary judg-

ment, and the district court granted PPG's motion. Gross appeals, and we affirm.

## I.

Following six years of active military duty as an enlisted Marine, Gross began working for PPG Industries in 1997. At the time of argument, Gross continued to work at PPG's Oak Creek, Wisconsin facility, which is one of many PPG facilities throughout the United States providing "coatings and specialty products and services" to construction, consumer, industrial, and transportation markets. Gross is employed at PPG as a "General Industrial Technician." Gross has continued to serve in the United States Marine Corps Reserve while employed at PPG.

Gross was deployed to active military service in Iraq from June 2004 until May 2005.[1] Before his deployment, Gross met with human resources advisor Kristi Price, who provided him with a document outlining the benefits PPG would provide to Gross while deployed. Before 2001, PPG provided employees serving in the National Guard or reserves up to four weeks per year of supplemental pay equal to the difference between the employee's PPG base salary and his or her military base pay. After the September 11, 2001 terrorist attacks, PPG adopted its "Attack on America" policy applicable

---

[1] Gross was again deployed to Iraq from 2007 to 2008, but that deployment is not relevant to his appeal.

to military leave. This policy increased the differential pay available to employees on military leave from four weeks to 180 days. PPG's military leave policy also guaranteed that a salaried employee like Gross would be entitled to return to his job following a military leave of absence. From 2001 onward, PPG maintained this differential pay policy relatively unchanged except that it increased the availability of differential pay progressively from 180 calendar days in 2001 up to 720 calendar days in 2004.

In particular, the 2004 version of the policy in effect during Gross's leave provided that:

> A salaried employee who is actively at work (not on layoff) and is called to active duty as a result of the terrorists' activities *shall be paid by the Company an amount equal to the difference between his or her monthly salary for their regular work schedule and the amount of his or her monthly military base pay, exclusive of allowances* (adjusted monthly base salary) for a total of **720 calendar days**. Payment will be made on the same frequency as normally and via direct deposit only.

PPG Indus. Inc., *Military Leave's [sic] of Absence—Attack on America* **Revised**, (Apr. 15, 2004) (italicized emphasis added).

From 2001 through May 2007, PPG employed the following basic formula to calculate the pay differential for employees taking a leave of absence for military service: PPG compared an employee's regular monthly base salary against the military pay that employee received (exclusive of allowances, such as housing), and

then issued a payroll check in the amount of the difference once it received the employee's military pay vouchers. For example, if a salaried PPG employee earned $4,000 per month and received $2,000 of military pay monthly, the employee would receive a check from PPG for $2,000 per month while on military leave so that his salary would be the same as it would have been if he had worked at PPG. Under this formula, the precise number of PPG workdays in any given month was irrelevant.

When Gross completed his deployment in 2005, he returned to his position at PPG. At that time, he began questioning the formula PPG had used to calculate his differential pay while he was deployed. Gross submitted a complaint about the pay calculation through PPG's "RESOLVE" Employee Dispute Resolution Process. Gross complained that because he was required to work extra days during his deployment (weekends and holidays that he would not have worked at PPG), PPG should have calculated a daily military pay rate and then deducted military pay only for days in a given month that he would have worked at PPG. This formula is based on the 30-day month the Department of Defense uses to pay members of the military regardless of the actual number of days in any given month. Using the same figures as above, it would be calculated using the following formula: (1) $2,000 monthly military pay divided by 30 days equals a $66 per day military pay rate; (2) $66 per diem military pay multiplied by the number of PPG monthly work days—ordinarily 21—equals $1386; (3) this amount is then subtracted from the PPG

monthly base pay—$4,000—yielding $2614 in differential pay, as opposed to the $2,000 paid under PPG's simple base pay less military pay calculation. PPG declined to revisit its formula for calculating military pay for Gross's 2004-05 deployment. It did, however, adopt the calculation urged by Gross (which was the calculation already used for *short term* military leaves of absence) for military deployments going forward, effective May 1, 2007. Thus, Gross received differential pay for a 2007-08 deployment according to the formula he wanted applied retroactively to his 2004-05 deployment.

Gross sued PPG, alleging that its calculation of his differential pay during his 2004-05 deployment as well as an alleged failure to retrain him upon his return violated provisions of USERRA addressing the reemployment rights of individuals who serve in the military. *See* 38 U.S.C. §§ 4312-13, 4316, 4318. He also claimed that PPG violated a Wisconsin state statute. The parties filed cross-motions for summary judgment. Gross moved for summary judgment under 38 U.S.C. § 4311, an anti-discrimination provision that prohibits employers from denying "any benefit of employment" to individuals who serve in the armed services. Although Gross failed to mention § 4311 in his complaint, the district court nonetheless denied his motion on the merits after concluding that differential pay is not a benefit of employment under USERRA. Because PPG had no obligation to offer differential pay, it likewise had no obligation to calculate such pay in the manner most beneficial to Gross. The district court also granted summary judgment to PPG on the remaining claims in

Gross's complaint. The court noted Gross's failure to cite any case law in support of his claims that PPG violated the other provisions of USERRA listed in his complaint. It also rejected Gross's attempt to insert a claim that PPG had retaliated against him after determining that Gross had never mentioned retaliation in his complaint. Likewise, the court rejected any claim based on Gross's allegation that PPG had failed to retrain him because Gross conceded that he was promptly reinstated to his former position when he returned from his deployment. Finally, the court granted summary judgment in favor of PPG on Gross's state-law claim. Noting that Gross's complaint cited a non-existent Wisconsin statute, the district court nonetheless entertained the possibility that Gross meant to cite Wisconsin's mini-USERRA provision. *See* Wis. Stat. § 321.65. That statute, however, did not assist Gross because the only portion of it applicable to private sector employers covered "state active duty" or "active duty in the national guard," which would not apply to Gross's service for the Marine Corps in Iraq. § 321.65(1)(a). Gross appeals.

## II.

We review the district court's decision on the parties' cross-motions for summary judgment de novo, construing all facts and inferences in favor of the party against whom summary judgment was granted. *E.g.*, *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 631 (7th Cir. 2010). Summary judgment is appropriate when there are

no genuine issues of material fact and judgment as a matter of law is warranted for the moving party. *See*, *e.g.*, Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). Gross continues to argue on appeal that PPG's handling of his 2005-06 military deployment violated USERRA. In particular, he insists that the way PPG calculated his differential pay denied him a "benefit of employment" protected by USERRA and also amounted to unlawful discrimination and retaliation against him.

We begin with his claim that the pay calculation employed by PPG violated USERRA. Enacted in 1994, USERRA is the most recent iteration of a series of laws dating back to 1940 intended to protect the employment and reemployment rights of members and former members of the armed forces. The stated goals of USERRA are (1) "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service"; (2) "to minimize the disruption" to the service member and others "by providing for the prompt reemployment" of such service members upon their return; and (3) "to prohibit discrimination against persons because of their service in the uniformed services."[2] 38 U.S.C. § 4301(a).

---

[2] "Uniformed services" is defined as "the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, and any other category of persons

(continued...)

Congress emphasized when enacting USERRA that to the extent it is consistent with USERRA, the "large body of case law that had developed" under the predecessor statutes to USERRA "remained in full force and effect." 20 C.F.R. § 1002.2.

As relevant here, two related provisions of USERRA govern service members' employment rights. The first, 38 U.S.C. § 4316, sets out the rights applicable while a military employee is away from work fulfilling service obligations. Section 4316 establishes that service members absent from employment are "deemed to be on furlough or leave of absence" and that they are "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer" to other similarly situated employees "who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service[.]" 38 U.S.C. § 4316(b)(1)(A)-(B). The second, 38 U.S.C. § 4311, is an anti-discrimination provision. It provides in pertinent part that an individual with "an obligation to perform service in a uniformed service shall not be denied . . . any benefit of employment by an employer on the basis" of his membership in or obligations arising from the uniformed service. 38 U.S.C. § 4311. A "benefit of employment" in turn, is defined as "any advantage, profit, privilege, gain,

---

² (...continued)
designated by the President in time of war or national emergency." 38 U.S.C. § 4303(16).

status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice[.]" 38 U.S.C. § 4303(2).

The district court considered Gross's claim under § 4311. Gross claims that the district court erroneously concluded that § 4311 does not obligate PPG to provide him with differential pay to supplement his military salary. Specifically, he claims that his interpretation of PPG's differential pay policy is a "benefit of employment" protected by USERRA. Gross's argument falls short on several levels.

First, as the district court recognized, we recently considered and rejected a claim that § 4311 requires employers to provide its military employees benefits, like differential pay, that exceed those benefits offered to its other employees generally. In *Crews v. City of Mt. Vernon*, a city police officer who was also a member of the Army National Guard sued the city and two police chiefs, claiming that the defendants violated USERRA by refusing to extend certain preferential scheduling benefits to him. 567 F.3d 860 (7th Cir. 2009). The Guard obligations of the plaintiff in *Crews* required him to attend weekend "drill" exercises monthly. *Id.* at 862. On those occasions officers could turn in their military pay in exchange for their regular City pay to avoid a pay shortfall. Those officers also had the option of allocating their personal days (vacation, compensatory time off, etc.) to days missed for drill so as to collect both City pay and military pay for those days. *Id.* Addi-

tionally, the police department allowed Guard employees to reschedule weekend work shifts when they conflicted with drill obligations. This policy allowed Guard employees to collect military pay for attending drill in addition to their full week's pay from the City. *Id.* at 863.

The Department later rescinded the policy of allowing Guard employees (who had become more numerous on the force) to reschedule their weekend work shifts on drill weekends. Thus the plaintiff, Crews, could no longer receive a full week's pay from the City if he missed a weekend work shift for drill unless he used his finite paid time off days. *Id.* We rejected Crews's assertion that the scheduling benefit previously extended by the police department was a "benefit of employment" protected by § 4311. In particular, we concluded that § 4311, as an anti-discrimination provision, protected only those benefits of employment provided to both military and non-military employees alike. *Id.* at 866. Thus, the Department's decision to rescind the preferential scheduling benefit previously offered to its Guard employees did not run afoul of § 4311. *Id.* at 866-67.

Gross proposes that we overrule *Crews* to the extent that it holds that a benefit of employment under § 4311 must be equally available to military and non-military employees. In support of his claim, Gross suggests that our reading of "any benefit of employment" fails to account for the fact that as an anti-discrimination provision, § 4311 protects a broader category of rights than those outlined in § 4316 applicable to service members on leave. In *Crews*, we first considered the plaintiff's

claim under § 4316 and concluded that because subsection (b)(1) requires "'only equal but not preferential'" treatment for military employees the police department had no obligation under § 4316 to afford preferential scheduling benefits to its Guard employees. *Crews*, 567 F.3d at 865 (quoting *Rogers v. City of San Antonio*, 392 F.3d 758, 769 (5th Cir. 2004)); *see also Monroe v. Standard Oil Co.*, 452 U.S. 549, 561 (1981) (holding that USERRA's predecessor statute did not require employers to provide special benefits unavailable to other employees to military reservists).

Despite Gross's insistence that the language guaranteeing "any benefit of employment" under § 4311 offers broader protection than § 4316, we explicitly considered and rejected such a claim in *Crews*. Indeed, after considering the plaintiff's claim under § 4316, we continued to analyze whether it could succeed under § 4311. We acknowledged that nothing in the text of § 4311 or § 4303(2) (defining "benefit of employment") limited "benefit of employment" to those benefits extended to both military and non-military employees alike. *Crews*, 567 F.3d at 866. Nonetheless, we ultimately concluded that such an interpretation made sense in light of § 4311's anti-discrimination purpose, which serves to protect military employees from discrimination, not provide them with preferential treatment. *Id.* at 867; *see also Sandoval v. City of Chicago*, 560 F.3d 703, 704-05 (7th Cir. 2009) ("[Section] 4311 is an antidiscrimination rule" that provides military employees "an equal-treatment norm."); *Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002) ("USERRA prohibits discrimination[.] . . . It

does not expressly require paid military leave."). Thus, we have considered and rejected the arguments Gross advances in favor of a more generous reading of § 4311, and he adds nothing new to the discussion that would warrant overturning our decision in *Crews*.

More importantly, Gross's contentions are largely academic, because even if we accepted the interpretation of § 4311 he urges, he would still not be entitled to relief. As is patently clear from the facts, PPG *did extend* differential pay to Gross. It is undisputed that PPG's calculation of differential pay guaranteed that he received the equivalent of his full PPG salary during his 2004-05 military deployment. His entire argument rests on the premise that PPG was obligated to provide not only differential pay, but differential pay calculated according to Gross's specifications. Gross seems to be claiming that the Attack on America policy in effect during his deployment amounted to an enforceable contract between PPG and him for differential pay calculated according to the per diem model he proposes.

Gross attempts to shore up his claim with an unpublished opinion from the Sixth Circuit where the court upheld a damages award under USERRA to an employee serving in the Army Reserve who received no differential pay for a six-month absence for active duty military service. *Koehler v. PepsiAmericas, Inc.*, 268 Fed. Appx. 396 (6th Cir. March 6, 2008). But *Koehler* does not help Gross. The plaintiff in *Koehler*, an employee of Pepsi, received no pay from the company while on military leave. This occurred despite a Pepsi policy enti-

tling certain military employees "pay coordination" intended to "bridge the gap between Military Pay and normal pay received." *Id.* at 399. After the plaintiff complained that he had not received differential pay, Pepsi deposited the net pay allegedly owed into his account and then unexpectedly withdrew it in a matter of days. *Id.* at 400. The court on appeal simply affirmed the district court's finding after a bench trial that the differential military pay was a "benefit" protected by USERRA—largely because Pepsi accepted on appeal the district court's finding that it violated USERRA. *Id.* at 403.

As the above facts demonstrate, *Pepsi* is inapplicable to Gross's situation. The plaintiff there had been promised differential pay by both a company policy and at least one company employee, and received none. In contrast, Gross *did* receive differential pay under PPG's Attack on America Policy. And unlike Pepsi, PPG never admitted a USERRA violation nor acceded to Gross's demand that differential pay be calculated according to his preferred formula.

The general premise underlying Gross's argument—that an employee may contract with his company for greater benefits than USERRA provides—is uncontroversial. *See Crews*, 567 F.3d at 867; *see also* 20 C.F.R. § 1002.7(c) ("USERRA does not supersede, nullify or diminish any . . . contract, agreement, policy, plan, practice or other matter that establishes an employment right or benefit that is more beneficial than . . . a right or benefit provided under the Act."). It simply does not assist Gross

here. PPG's Attack on America policy was a voluntary company policy. Gross presents no evidence to the contrary. Moreover, as discussed above, PPG did not fail to perform under the policy or in any way rescind it. The policy in effect during Gross's 2004-05 deployment extended differential pay in "an amount equal to the difference between his or her monthly salary for their regular work schedule and the amount of his or her monthly military base pay, exclusive of allowances." This language says nothing about *how* that difference will be calculated. The method PPG employed during Gross's 2004-05 deployment ensured that Gross suffered no loss of pay or benefits on account of his service. Gross's proposed calculation was not guaranteed by the language of the policy. There is thus no need to rely on *Crews'* "equal benefits" holding to see that Gross's claim fails. There is no evidence in the record that *any employee* during the relevant time period, military or otherwise, received differential pay according to the calculation Gross proposes. Because PPG *did* extend differential pay to Gross, overruling *Crews* would not assist Gross with his argument that § 4311 required PPG to pay him not only differential pay, but differential pay calculated according to the per diem model he proposed. And although PPG's decision to adopt a more favorable pay calculation in 2007 is laudable, nothing in USERRA obligates it to retroactively apply that calculation or suggests that the previous method used was unlawful or discriminatory. *See* 20 C.F.R. § 1002.7(a) ("USERRA establishes a floor, not a ceiling, for the employment and reemployment rights and benefits of those it protects. . . .

[A]n employer may provide greater rights and benefits than USERRA requires[.]"); *Crews*, 567 F.3d at 867 (noting that USERRA encourages military service by "authorizing employers to go above and beyond the minimum requirements of the statute").

That leaves what Gross characterizes as his retaliation claim under § 4311. The district court concluded that PPG was entitled to summary judgment because Gross's complaint failed to allege any retaliatory action by PPG. Gross now argues that the district court failed to understand that PPG's alleged miscalculation of his pay was itself retaliatory. PPG maintains, as it did during the summary judgment proceedings below, that Gross never raised his retaliation claim until he moved for summary judgment. PPG also argues, and we agree, that Gross's claim fails on the merits.

Section 4311(b)(1) prohibits an employer from taking "any adverse employment action against any person because such person . . . has taken an action to enforce a protection" guaranteed by USERRA. Thus, Gross must demonstrate that he engaged in activity protected under USERRA and that PPG took an adverse employment action against him as a result. *See Francis v. Booz, Allen, & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006); *see also Crews*, 567 F.3d at 868-69. As we noted in *Crews*, the same requirement of a "materially adverse" employment action that applies under other civil rights statutes is applicable under USERRA. *Crews*, 567 F.3d at 868-69. That is to say, Gross must point to an employment action such as termination, demotion accompanied by a loss

of pay, or a material loss of benefits or responsibilities that "significantly alters the terms of conditions" of his employment. *Id.* at 869 (quoting *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004)).

Gross claims that he engaged in protected activity by complaining about PPG's calculation of his differential pay, and that PPG retaliated when it decided to "deny [him] differential pay." He also seems to be arguing that PPG's original calculation of his differential pay was an adverse employment action, despite the fact that this calculation obviously preceded his RESOLVE complaint about this very issue. It is easy to see that Gross's claim fails on multiple levels. First, contrary to the assertion in Gross's brief, PPG never "denied" him differential pay—it simply did not calculate that pay according to Gross's preferred formula.

Second, the calculation employed by PPG does not amount to an adverse employment action. PPG considered his RESOLVE complaint and determined that its calculation of differential pay conformed with both USERRA and its internal Attack on America Policy. As discussed above, Gross suffered no loss of pay or benefits as a result of his 2004-05 deployment, and PPG was entirely within its rights to interpret its policy as it did. Moreover, on a temporal level it is difficult if not impossible to understand how PPG's calculation of Gross's military pay in 2004-05 could have been *caused* by his RESOLVE complaint some time *after* he returned from his deployment. At best, Gross seems to be arguing that the continued refusal to calculate the pay

as he wished following his complaint amounted to retaliation. For the reasons outlined above, this argument too goes nowhere—the calculation, which left Gross in the same financial position while deployed as if he had never left—can hardly be considered a materially adverse employment action. *See Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) ("Federal law protects an employee only from retaliation that produces an injury, and, therefore, an employer's retaliatory conduct is actionable only if it would be materially adverse to a reasonable employee."); *Cole v. Illinois*, 562 F.3d 812, 816-17 (7th Cir. 2009) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.") (internal quotations and citation omitted). Thus, whether considered on the merits or as a result of failure to raise the claim below, Gross's retaliation claim fails as a matter of law and PPG is entitled to summary judgment.

There is one final matter. Gross also argues that the district court erred by taxing costs against him in contravention of USERRA. Specifically, USERRA provides that, "[n]o fees or court costs may be charged or taxed against any person claiming rights under this chapter." 38 U.S.C. § 4323(h)(1). The district court's summary judgment order specified that the action was dismissed on the merits "with costs as taxed by the clerk of the court." In recognition of § 4323(h)(1), PPG never filed a bill of costs and no costs have been imposed on Gross. Thus, this issue may be moot. Nonetheless, out of an abundance of caution, we will remand for the limited purpose of allowing the district court to correct the misstatement in the judgment regarding costs. *See United*

*States v. Bonner*, 522 F.3d 804, 808-09 (7th Cir. 2008) (ordering limited remand so that district court could correct a clerical error in written judgment).

**III.**

For the foregoing reasons, we AFFIRM the judgment of the district court granting summary judgment to PPG Industries, and REMAND solely for the district court to correct the error identified above regarding the taxation of costs.