In the

# United States Court of Appeals
### For the Seventh Circuit

No. 13-2901

CELIA GREENGRASS,

*Plaintiff-Appellant,*

*v.*

INTERNATIONAL MONETARY SYSTEMS LTD.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:12-cv-00212—**Rudolph T. Randa**, *Judge.*

ARGUED SEPTEMBER 19, 2014 — DECIDED JANUARY 12, 2015

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Celia Greengrass sued her former employer, International Monetary Systems Ltd. ("IMS"), alleging that IMS retaliated against her for filing a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") against the company by naming her in its annual SEC filings and casting her complaint as "meritless." The district court granted summary judgment in favor of IMS on the ground that Greengrass lacked evidence showing a

causal link between her EEOC filing and the alleged retalia-tory act. We reverse. Greengrass made out a prima facie case of retaliation by demonstrating that she engaged in a statu-torily protected activity when she filed her EEOC charge, that IMS engaged in an adverse employment action when it listed her name in its SEC filings, and that there was suffi-cient evidence for a rational trier of fact to find that IMS listed her name because Greengrass filed the EEOC charge.

## I. BACKGROUND

Celia Greengrass began working as an account executive at IMS in January 2007. On September 10, 2007, Greengrass made a written complaint to IMS alleging harassment by Kevin Anderson, IMS's Las Vegas General Manager. Two days later, John Strabley, IMS's CEO, forwarded a copy of the complaint to Anderson, the alleged harasser, along with the message, "Call me before you explode." Greengrass quit her job at IMS on November 25, 2007. On January 20, 2008, Greengrass filed a discrimination complaint with the EEOC, alleging sex discrimination, national origin discrimination, and retaliation.

As a publicly traded company, IMS is subject to the SEC's annual filing requirements. In particular, item 103 of SEC Regulation S-K requires companies to describe any ma-terial legal proceedings, including the principal parties, facts giving rise to the proceeding, and the relief sought. *See* 17 C.F.R. § 229.103 (1982). In March 2008, IMS's Treasurer and CFO, Danny Weibling, consulted with an outside account-ant, Derek Webb, regarding whether Greengrass's EEOC complaint needed to be mentioned in the company's SEC filings. Following this consultation, IMS did not refer to Greengrass's complaint in its 2008 disclosures. It did, how-

ever, without naming the complainant, refer to a different EEOC complaint brought against the company. IMS's 10-Q forms for the periods ending March 31, 2008, June 30, 2008, and September 30, 2008 (all of which were prepared and filed after Weibling's discussion with Webb) reported that IMS was engaged in litigation, but did not mention the names of parties, instead referring to the litigants as "former employees."

At some point in July 2008, IMS received correspondence from the EEOC regarding Greengrass's complaint. Apparently, the agency sought information regarding other sexual harassment claims leveled against the company. On July 29, 2008, IMS's general counsel, Martin Sklapsky, sent an email to the company's management team (including Weibling, Strabley, and President/CEO Donald Mardak) regarding how forthcoming IMS should be with the EEOC. It stated,

> [T]he EEOC has finally responded to the … Greengrass complaint. At this point, they're just looking for some additional information. One of the items they're asking about is any other sexual harassment claims made by any employee between Nov 2005 and June 2008. Obviously, the John Lounsbury complaint will have to be included but what about the two issues raised by Carol Cannedy?
>
> I don't think the issue with Stan is a problem. She brought it to our attention, we addressed it with Stan and it was done. The problem is the issue with Paul. There was a complaint made to Paul G, the situation was discussed with Paul W and then the behavior she was com-

plaining about occurred at least one other time after the discussion. The question is, do we include this in our response to the EEOC? They're asking about other complaints because they're looking for a pattern of conduct by IMS. Their logic would be that if we have multiple complaints, obviously we're doing something wrong.

Our problem is that we don't know if Celia was aware of that issue and told the EEOC of other complaints made. The letter from the EEOC appears to just be a form letter and the request for that information is likely a standard question. I'm asking for your opinions on this because no matter how we respond, IMS has some potential liability.

If we do not mention it and Celia already reported it to them, it makes it appear IMS is trying to hide something. If we do report it, that means we've had three sexual harassment complaints in about eight months. That's the sort of pattern they're looking for and since all the complaints are from different offices, it would give them the impression that it's a company-wide problem, not just an issue with one or two employees. That's the sort of situation where the EEOC could step in and file suit themselves. If Celia has to litigate this herself, IMS is probably not going to get a large damages award because she likely doesn't have the resources for a lengthy court fight. However, if

> the EEOC files suit, that is no longer an issue and they'll be looking to punish IMS for a pattern of behavior, not necessarily just this one incident.

> This all may not matter anyway. One of the things they asked for was a list of IMS employees. I've asked for clarification on whether they want a list of all employees or for just the Las Vegas office. If they want a list of every employee, it would seem they intend to conduct an investigation of the entire company, not just the Las Vegas office. If that's the case, we may have no choice but to disclose the incidents with both Paul and Stan.

Around January 12, 2009, IMS received notice that the EEOC wanted to conduct interviews regarding Greengrass's complaint. This signaled a major ramping up of the agency's involvement in Greengrass's case.

For its next SEC filing, dated April 6, 2009, IMS chose to include Greengrass's complaint and to specifically name her. The "Legal Proceedings" section of its annual 10-K filing stated: "On January 20, 2008, Celia Greengrass filed a sexual harassment complaint with the [EEOC]. The claim is still under investigation by the EEOC but IMS believes the claims to be meritless and will vigorously defend itself." (In reality, Greengrass's EEOC claim did not allege sexual harassment, but rather sex discrimination, national origin discrimination, and retaliation against IMS.) These disclosures were repeated in the "Legal Proceedings" portion of IMS's Form 10-K/A Amendment No. 1 Annual Report and in a quarterly disclosure dated May 14, 2009. Other former employees with

pending claims against IMS were also specifically named in these filings.

On September 3, 2009, the EEOC found reasonable cause to believe that Greengrass and other females as a class were subject to harassment because of their sex and national origin, and that Greengrass and females, as a class, were constructively discharged because of their sex, national origin, and in retaliation for engaging in protected activity. Around December 24, 2009, the parties resolved Greengrass's original EEOC complaint through conciliation, which did not include IMS's rehiring of Greengrass.

IMS reported the resolution of its dispute with Greengrass in the company's Form 10-K Annual Report for 2009, stating, "During 2009, the company was defendant in two cases of note.… Settlement was reached in the EEOC matter in November 2009." It did not refer to any other parties by name. In later filed quarterly and annual reports, IMS continued to refer generically to plaintiffs and defendants in ongoing litigation, not identifying them by name.

After leaving IMS, Greengrass struggled to find and maintain regular employment. Greengrass attributes her post-IMS difficulties to the SEC filings that identified her by name. She claims that a Google search of her name draws multiple results regarding IMS's SEC filings that include her name. She also claims that a recruiter informed her she was "unemployable" due to this information.

On September 28, 2010, Greengrass filed a second EEOC complaint against IMS, alleging it retaliated against her because of her previous complaint based on its SEC filings. On March 25, 2011, the EEOC found "reasonable cause" to be-

lieve IMS had violated Title VII's retaliation provision by "providing information regarding her previous Charge of Discrimination on a public record to preclude her from obtaining new employment." The parties were unable to resolve the dispute through conciliation and the EEOC issued Greengrass a right-to-sue letter.

Greengrass sued IMS alleging retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. After discovery closed, both Greengrass and IMS moved for summary judgment. The district court granted summary judgment to IMS on all claims, finding Greengrass had "no evidence" of causation, and she appealed.

## II. ANALYSIS

Greengrass challenges the district court's conclusion that she did not provide enough evidence that IMS retaliated against her for asserting her rights under Title VII to survive summary judgment. We review the district court's grant of summary judgment de novo, "constru[ing] all facts and reasonable inferences from the record in a light most favorable to the nonmoving party." *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). "Summary judgment is appropriate when there are no genuine issues of material fact and judgment as a matter of law is warranted for the moving party." *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011) (internal citations omitted).

A Title VII plaintiff can prove retaliation using either the direct or indirect method. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013). Under the direct method, which Greengrass relies upon, a plaintiff must prove (1) that she engaged in statutorily protected activity; (2) that she was

subjected to an adverse employment action; and (3) that there was a causal connection between the two. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

There is no dispute that Greengrass satisfied the first element, as her formal EEOC charges were "the most obvious form of statutorily protected activity." *Silverman v. Board of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011). We also find (and IMS does not dispute) that listing Greengrass's name in publicly available SEC filings (and referring to her complaint as "meritless") constituted a materially adverse employment action. As Greengrass's allegations regarding the recruiter who called her "unemployable" make clear, an employee's decision to file an EEOC complaint might be negatively viewed by future employers. So, naming EEOC claimants in publicly available SEC filings could "dissuade[] a reasonable worker from making or supporting a charge of discrimination"—the essence of a materially adverse employment action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888-91 (7th Cir. 1996) (holding that "post-termination acts of retaliation that have a nexus to employment," *e.g.*, by "imping[ing] on [an employee's] future employment prospects" are actionable under Title VII).

We now turn to the causation requirement, which the district court found Greengrass failed to satisfy. To demonstrate a "causal link" between the protected activity and the adverse employment action, a plaintiff must show the defendant "would not have taken the adverse … action but for [her] protected activity." *King v. Preferred Technical Grp.*, 166 F.3d 887, 892 (7th Cir. 1999). Direct evidence typically requires an admission by the employer of discriminatory ani-

mus, which is "rare." *Benders v. Bellows & Bellows*, 515 F.3d 757, 764 (7th Cir. 2008). But a plaintiff may also supply the causal link through circumstantial evidence from which a jury may infer intentional discrimination. *Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009). Such circumstantial evidence may include suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). When the plaintiff has "assemble[d] from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013).

Greengrass has assembled a convincing array of circumstantial evidence. We begin with her evidence of suspicious timing. Suspicious timing is generally found when "an adverse employment action follows close on the heels of protected expression." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). IMS argues that it did not begin listing names in its SEC filing until 14 months after Greengrass filed her first EEOC complaint, undercutting any suggestion of suspicious timing. However, this is not the only relevant timeframe. IMS did not become aware of the EEOC's intention to seriously pursue Greengrass's claim until January 2009, when the agency informed IMS it would be taking interviews. Before this point—as Sklapsy's July 29, 2008 email to IMS management makes clear—the company was confident it could avoid a "large damages award" because, without the EEOC's involvement, Greengrass "likely [would not] have the resources for a lengthy court fight." Thus, a reason-

able jury could find that IMS decided to retaliate against her not when she filed her charge, but when IMS saw that the EEOC was taking the charge seriously, and that the retaliation occurred in its next scheduled SEC filing on April 6, 2009. *See Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011) (noting whether amount of time lapsed is suspicious "depends on context").

Greengrass presented evidence of animus as well. A reasonable jury could, for example, interpret Sklapsky's July 2008 email as evincing disdain for the EEOC process and animus against Greengrass for filing her complaint. Animus might also be inferred from Strabley's decision to forward Greengrass's complaint to her alleged harasser with the message, "Call me before you explode." The fact that IMS employees do not mention how IMS might retaliate is irrelevant since they raise the reasonable inference that IMS held animus about the process and Greengrass's decision to engage it. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 974 (7th Cir. 2012) (noting whether ambiguous statements are discriminatory, retaliatory, or benign "is an appropriate question for a jury").

Greengrass also provided evidence of pretext. Pretext can be shown by "identif[ying] … weaknesses, implausibilities, inconsistencies, or contradictions" in an employer's asserted reason for taking an adverse employment action such "that a reasonable person could find [it] unworthy of credence." *Coleman*, 667 F.3d at 852-53 (citations omitted). IMS maintains that it changed its policy to include names on its SEC filings based on advice from "auditors and others" regarding compliance with SEC Regulation S-K item 103. The district court agreed, finding that "[u]ltimately, it was uncer-

tainty over the filing requirements, not discriminatory ani-mus, which led to the inclusion of Greengrass's name on IMS's SEC filings." However, IMS's multiple shifts in poli-cy—from not including litigants' names, to listing them, and then not including them again—could lead a reasonable ju-ror to find that IMS is "dissembling" when it contends that it listed Greengrass's name in response to advice regarding compliance with SEC regulations. *See id.* (noting pretext can be shown by evidence of "dissembling"). As Greengrass points out, IMS had also consulted with an outside account-ant, Derek Webb, before filing its 2008 disclosures, which did not identify litigants by name. And IMS offers no evi-dence of when it received the alleged advice to change poli-cy. Where, as here, "there is a question of fact as to the be-lievability of an employer's purported reasons for an em-ployment decision then, 'even if the evidence presented by [the plaintiff] does not compel the conclusion that [her em-ployer] discriminated against [her] when making its ... deci-sion, at a bare minimum it suffices to defeat [the employer's] summary judgment motion.'" *Rudin v. Lincoln Land Commu-nity College*, 420 F.3d 712, 726 (7th Cir. 2005) (quoting *Court-ney v. Biosound, Inc.*, 42 F.3d 414, 423 (7th Cir. 1994)). In light of this evidence, summary judgment for the defendant was inappropriate.

## III. CONCLUSION

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.