**FILED**
**APRIL 27, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CHRISTINA MARTIN, JASON LONGORIA, CHARLES ARNOLD, JOHN SAGER, DARREL NASH, ERIK THOMAS, DARIN FOSTER, and LUIS GONZALEZ on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | No. 38332-6-III |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE STATE OF WASHINGTON, THE WASHINGTON STATE PATROL, JEFFREY DEVERE, JAY CABEZUELA, TIMOTHY WINCHELL, and JOHN BATISTE, | ) ) ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — At issue on appeal is what remained of a class action proceeding following a substantial settlement in 2017. Claims under 38 U.S.C. § 4316 that were excluded from settlement of the lawsuit brought against the Washington State Patrol (WSP) by current and former WSP employees were dismissed on summary judgment.

A proposed representative of the class appeals the trial court's dismissal of the claims and its denial of the motion to substitute her as class representative. We affirm.

No. 38332-6-III
*Martin, et al. v. State of Washington, et al.*

FACTS AND PROCEDURAL BACKGROUND

Two claims remained following the multimillion-dollar settlement of other claims asserted in this class action brought on behalf of hundreds of current and former troopers and higher-ranking officers of the WSP. In addition to being active or former WSP employees, the class members are veterans who were called away from their civilian employment for active duty tours. The two remaining claims arise under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-35 (USERRA). Among the purposes of USERRA are to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers that can result from such service, and to prohibit discrimination against persons because of their service in the uniformed services. 38 U.S.C. § 4301(a)(1), (3).

For service members whose civilian employment is interrupted by a period of service in the uniformed services, 38 U.S.C. § 4316(a) protects their entitlement to "the seniority, and other rights and benefits determined by seniority," that the person had on the commencement of service and would have attained had they remained continuously employed.

38 U.S.C. § 4316(d) permits service members to use paid leave (vacation, annual or similar leave) during their period of uniformed service. It also forbids employers from requiring the use of such leave during that service. Among the paid leave available to

2

No. 38332-6-III
*Martin, et al. v. State of Washington, et al.*

the WSP's employees is 21 days of paid military leave each year that RCW 38.40.060(1) guarantees to public employees.

At issue under the two USERRA provisions is how a WSP time and activity report (TAR) policy is applied to employees who elect to use paid leave once a period of leave exceeds 15 days. The policy—TAR § 2.020—was created by WSP Chief Financial Officer Bob Maki "to ensure all WSP employees are treated equally while on any type of long-term leave." Clerk's Papers (CP) at 316-17 (emphasis omitted). It achieves this by providing that the official WSP workweek is 8 hours a day, 5 days a week, and for employees who are on leave longer than 15 days (other than Family Medical Leave Act leave) the workweek shall be Monday through Friday, 8 a.m. to 5 p.m. In a declaration filed below, Mr. Maki explained:

> 4. The default schedule for all WSP employees is 5 days a week, 8 hours a day. Due to scheduling demands, and to provide employees with flexibility, WSP allows 'alternate schedules,' subject to management approval. Alternate schedules can include, but are not limited to, employees working 4 days a week, 10 hours a day. It can also include employees working night shifts or swing shifts. Many employees on night shifts and swing shifts are entitled to shift differential compensation.
>
> 5. Before the implementation of TAR § 2.020, employees taking long-term leave that were on night or swing shifts would demand shift differential even when they were taking leave and not working hours which would warrant payment of shift differential. TAR § 2.020 resolved this problem by switching all employees to the default 5 day 8 hour schedule after taking 15 consecutive days of long-term leave.

3

6. The plain language of TAR § 2.020 shows that it applies to all WSP employees taking any type of long term leave, with the exception of FMLA[1] leave. In fact, employees taking shared leave, approved temporary disability status, or long-term leave without pay change their schedules pursuant to TAR § 2.020 more often than employees taking paid Military Leave.

CP at 317 (emphasis omitted).

When deposed, Mr. Maki testified that troopers work in the WSP's field operations bureau, and he estimated that more than half of them work four 10-hour day schedules rather than five 8-hour day schedules (hereafter sometimes referred to as "four tens" and "five eights" schedules). He rejected the characterization of four 10-hour days as the "customary" schedule, however, because the default five 8-hour day schedule is established by the collective bargaining agreement (CBA) for the WSP Troop Association. CP at 573-74. An employee must get permission from management to work an alternative schedule, such as four 10-hour days, and these requests will only be granted if the alternative schedule meets operational needs and is in the best interest of the agency. WSP management has also reserved the right under the CBA to rescind an alternative schedule at any time upon 30-days' notice.

The contention of the class is that application of TAR § 2.020 violates 38 U.S.C. § 4316(a) and (d) because it "require[s] the employee to exhaust their . . . paid military leave more quickly." *See* Br. of Appellants at 4. The position of the WSP is that

---

[1] Family Medical Leave Act, 29 U.S.C. ch. 28.

4

where two differently-scheduled employees report for equivalent uniformed service, the policy better equalizes their paid leave. Were it not for the policy, the paid leave for two employees serving identical uniformed service would be 210 hours' paid leave (21 x 10) for the employee on a four tens schedule and 168 hours' paid leave (21 x 8) for the employee on the five eights schedule. TAR § 2.020 does not eliminate the discrepancy, but it reduces it.

The WSP's accounting witness, Sean Black, produced a report in which he explained that applying TAR § 2.020, the trooper on the four tens schedule receives 150 hours' pay for the first 15 days of military leave and 48 hours' pay for the remaining 6 days. By contrast, the trooper on the five eights schedule receives 120 hours' pay for the first 15 days of leave and 48 hours for the remaining 6 days. Using an assumed rate of pay of $30 per hour, the application of TAR § 2.020 reduces the discrepancy between the veterans' paid leave to $900 more for the trooper working a four tens schedule.

The parties filed cross motions for summary judgment on these remaining claims. The class members—recognizing that Christina Martin and the seven other original class representatives had not suffered an injury under the § 4316 claims—moved for leave to substitute trooper Barbara Werner as class representative.

In a declaration in support of the substitution motion and her standing, Trooper Werner testified that in September 2017, she received year-long orders to active duty at a

time when she was assigned to work a four-day, ten-hour schedule. In early October 2017, she requested military leave pursuant to RCW 38.40.060. Thereafter, she testified, she was paid for military leave at the rate of four 10-hour shifts per week until the 15th day she was absent, when "WSP changed my work schedule to five 8-hour days a week." CP at 544. In November 2018, on her return from active duty, she was returned to her detachment's four day, 10-hour work schedule. She testified that the application of TAR § 2.020, by

> charg[ing] for military leave as though I had a five day, 8-hour work schedule . . . caused my RCW 38.40.060 leave to dwindle at a rate of five days per week of absence, versus 4 days a week for my regularly scheduled work week.
>
> 21. When my RCW 38.40.060 leave balance was prematurely depleted, I was then required to substitute other forms of paid leave (or unpaid leave) to cover military days, or loose [sic] regular pay. This in fact happened, as I was required to take leave without pay starting in November 2, 2017.

CP at 545.

The WSP pointed to evidence that Trooper Werner did not request nor was she required to take consecutive days of paid military leave. It disputed on that basis that her leave was, in her words, "prematurely depleted." It pointed out that after Trooper Werner requested and was approved for a number of days of military leave in October 2017, she requested to use the six remaining days of her leave over a three-month period from November 2, 2017 to February 1, 2018.

6

The WSP also pointed to discovery revealing that other class members to whom TAR § 2.020 was applied after December 21, 2016, sometimes did not exhaust their military leave and did not necessarily use it right away or continuously. The situations of eight officers affected by TAR § 2.020 were discussed during Mr. Maki's deposition, revealing that four never exhausted their military leave, two others exhausted military leave in only some of the years they were eligible, and some requested to use their military leave intermittently rather than continuously. Br. of Resp'ts at 11-16.

Based on the evidence and argument, the trial court concluded that the statutory right to paid military leave provided by RCW 38.40.060 is a benefit of employment within the meaning of 38 U.S.C. § 4303(2). It held, however, that it is not a benefit based on seniority, which it must be to violate 38 U.S.C. § 4316(a). The court also held that because class members are not and have not been entitled to make their own schedule, no right based on seniority was violated.

As for the class's 38 U.S.C. § 4316(d) claim, the court held that its argument that TAR § 2.020 forced class members to take a fifth, unscheduled workday in a week failed because the fifth day was charged only after the class member's schedule reverted to a five day, 8-hour schedule.

Finally, the court held that Trooper Werner lacked standing because she had suffered no injury; she "was afforded the full twenty-one days of paid leave under

No. 38332-6-III
*Martin, et al. v. State of Washington, et al.*

RCW 38.40.060" and "WSP never required the use of leave nor did they refuse Werner

or other class members . . . the leave they were legally entitled to." CP at 645.

Trooper Werner appeals.

ANALYSIS

An appellate court reviews a grant or denial of summary judgment de novo.

*Washburn v. City of Fed. Way*, 169 Wn. App. 588, 609, 283 P.3d 567 (2012). We

perform the same inquiry as the trial court. *Owen v. Burlington N. & Santa Fe R.R. Co.*,

153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Summary judgment is appropriate if the

record before the trial court "show[s] that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We

must consider all evidence in favor of the nonmoving party. *Keck v. Collins*, 184 Wn.2d

358, 368, 357 P.3d 1080 (2015).

Like the trial court, we view the issue of Trooper Werner's standing and motion to

be substituted as class representative as inextricably tied to the motions for summary

judgment on the merits. Because class counsel conceded that the eight earlier-appointed

class representatives had not been injured by violations of 38 U.S.C. § 4316, the

continuing viability of the class action depended on Trooper Werner's ability to

demonstrate a claim. A party who lacks standing herself cannot represent a class of

8

No. 38332-6-III
*Martin, et al. v. State of Washington, et al.*

which she is not a party. *Johnston v. Beneficial Mgmt. Corp.*, 85 Wn.2d 637, 645, 538 P.2d 510 (1975).

I.      THE WSP'S ALLEGED REFUSAL TO PERMIT OR REQUIRED USE OF VACATION, ANNUAL OR SIMILAR LEAVE

Trooper Werner first argues that the application of TAR § 2.020 violates 38 U.S.C. § 4316(d), which provides:

> Any person whose employment with an employer is interrupted by a period of service in the uniformed services *shall be permitted, upon request . . . to use* during such period of service *any vacation, annual, or similar leave* with pay accrued by the person before the commencement of such service. *No employer may require any such person to use* vacation, annual, or *similar leave* during such period of service.

(Emphasis added.)

Trooper Werner offered no evidence of any occasion when WSP personnel refused to permit a class member to use paid leave or required class members to use paid leave. The gist of her declaration is that when TAR § 2.020 operates following the 15th consecutive day of leave, *the policy* causes a trooper's remaining days of paid leave to entitle them to only 8 hours' pay, rather than 10 hours' pay. Her conclusory characterization is that this "require[s] the employee to exhaust their accrued paid military leave more quickly." Br. of Appellants at 4.

She assigns error on appeal to findings that she was not "required" or "forced" to take leave, characterizing these as "disputed issue[s] of fact." Br. of Appellants at 3. But

9

these so-called factual disputes are based solely on the conclusion she draws in her declaration. "An affidavit submitted in support of or in response to a motion for summary judgment 'does not raise a genuine issue of fact unless it sets forth *facts evidentiary in nature*, i.e., information as to what took place, an act, an incident, a reality as distinguished from supposition or opinion.'" *Johnson v. Recreational Equip., Inc.*, 159 Wn. App. 939, 954, 247 P.3d 18 (2011) (emphasis added) (quoting *Snohomish County v. Rugg*, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002)). "'[U]ltimate facts, conclusions of fact, conclusory statements of fact or legal conclusions are insufficient to raise a question of fact.'" *Id.* (quoting *Rugg*, 115 Wn. App. at 224).

Facts "evidentiary in nature" were presented in connection with the cross motions for summary judgment. Evidence was presented that class members, including Trooper Werner, do not always use their military leave on continuous days, and it is not uncommon for them to use less than all of their available leave. Evidentiary facts to support Trooper Werner's contentions were lacking: again, she did not present evidence of any occasion when WSP personnel required or forced a class member to use paid leave.

In her reply brief, Trooper Werner characterizes what TAR § 2.020 "requires" differently: "an employee affected by TAR § 2.020 is being compelled to burn through

10

their paid military leave benefit both more quickly *and for less compensation.*" Reply Br. of Appellants at 6 (emphasis added). There's the rub.

Until TAR § 2.020 operates to adjust an alternate schedule, WSP employees working a four tens schedule who take a day of paid leave have an advantage over employees working a five eights schedule: When the former employees take a day off, they get 10 hours of relief from work with 10 hours' pay, rather than 8 hours relief from work with 8 hours' pay. They get to enjoy this benefit for short-term leaves and even for the first 15 days of long-term leave. TAR § 2.020 only evens the playing field following the 15th day of a long-term leave.

Contrary to Trooper Werner's "premature depletion" charge, the disparity means that during the first 15 days of military leave, the employees on a four tens schedule are able to exhaust their paid military leave *more slowly*. During that period, they are able to preserve their usual weekly income by requesting and using only 4 of their 21 days of statutory leave, which is what Trooper Werner did in October 2017. To preserve *their* usual weekly income, employees on a five eights schedule must request and use up 5 leave days.

After the 15th day, TAR § 2.020 does not make employees on a four tens schedule "burn through [their] military leave days faster"—a leave "day" for them, like their coworkers on a five eights schedule, is still a day. CP at 95. But they are then receiving

less compensation for their leave days. They are now receiving only 100 percent of what an employee on a five eights schedule receives for a leave day. Earlier, they were receiving 125 percent of the amount an employee on a five eights schedule receives for a leave day.

Applying the plain language of 38 U.S.C. § 4316(d), Trooper Werner, on behalf of the class, presented no viable cause of action for a violation of that statute.

We cannot leave discussion of the § 4316(d) claim without addressing Trooper Werner's significant reliance for this claim on *Butterbaugh v. Department of Justice*, 336 F.3d 1332 (Fed. Cir. 2003) and RCW 38.40.060(1), even though we deem them irrelevant.

*Butterbaugh* construed a statute not involved in this case: 5 U.S.C. § 6323(a)(1), under which the appellants—correctional officers at a federal prison who were also members of the military reserves—were entitled to 15 days of paid reserve training leave. Their employer, the Department of Justice, had included days on which employees were not scheduled to work (e.g., weekends and holidays) when calculating how much leave an employee took. Accordingly, an employee with a Monday-Friday work week who attended reserve training from one Friday to the next would be charged for eight days of training, even though the employee had only been absent for six workdays. *Butterbaugh*, 336 F.3d at 1333. As a matter of statutory construction, *Butterbaugh* held that "the

12

'days' that section 6323(a)(1) refers to are *leave* days, not 'training days' or 'reserve duty days,'" so employees should only be charged for the days on which they were scheduled to work. *Id.* at 1337.

*Butterbaugh*, again, construed a federal law unrelated to this case. And the opinion does not address or provide even the slightest suggestion of how the federal court would have viewed a prison policy that, in the interest of parity, prescribed a standard work schedule for correctional officers during their reserve training: one that would assure them their standard rate of pay, but eliminate distortions that could arise from different "daily" schedules. *Butterbaugh* is irrelevant to this appeal.

RCW 38.40.060(1) provides that public employees "shall be entitled to and shall be granted military leave of absence from such employment for a period not exceeding twenty-one days during each year beginning October 1st and ending the following September 30th in order that the person may report for required military duty, training, or drills . . . ." RCW 38.40.060(4)(a) provides that an employee "shall be charged military leave only for days that he or she is scheduled to work for the state or the county, city, or other political subdivision."

TAR § 2.020 provides in relevant part:

The official Washington State Patrol workweek begins at 0000 on Sunday and ends at 2359 the following Saturday. Scheduled employees are assigned 8 regular hours per day, 5 days per week. Any alternative

> work schedule must be in conformance with the Civil Service Rules or Bargaining Unit Agreements.
>
> A schedule change can be a monthly or weekly rotation. It can also occur when an employee's schedule changes due to training, military leave, shared leave, approved temporary disability status, long-term leave without pay, required meetings, court appearances, change of assignment, or personnel shortages, etc.
>
> The work schedule for all personnel on military leave, shared leave, approved temporary disability status, or long-term leave without pay longer than 15 working days shall be Monday through Friday, 8 a.m. to 5 p.m., WSI 01, with the exception of those on approved Family Medical Leave Act (FMLA) leave.

CP at 321. The application of TAR § 2.020 to veterans on long-term leave does not conflict with RCW 38.40.060. A WSP employee is charged military leave "only for days that he or she is scheduled to work."

Trooper Werner argues that RCW 38.40.060 cannot be construed to permit an adjustment like that made by TAR § 2.020 because it would "frustrate the purpose" of the statute. Br. of Appellants at 24. She argues that if the WSP converted the schedule of an employee on military leave to seven days a week, or refused to schedule employees on leave for any work at all, it could thereby force the employee to use paid leave days for weekends or could avoid its military paid leave obligation altogether, which would be "absurd result[s]." Br. of Appellants at 25. Those *would* be absurd results. They might well be actionable under 38 U.S.C. § 4311, a nondiscrimination provision under USERRA that is not the basis of a claim by the class.

14

No. 38332-6-III
*Martin, et al. v. State of Washington, et al.*

The fact that two hypothetical, extreme, discriminatory end-runs around the law would fail is not an argument against a reasonable employment policy, however. Nothing in RCW 38.40.060 is frustrated by a policy that allows employees on a four tens schedule to keep their $900-or-so paid leave premium, but reduces, at least, the pay disparity between them and their fellow veterans. *And cf. Bearden v. City of Ocean Shores*, __ F.Supp.3d __, 2022 WL 17532303 at *8 (W.D. Wash. 2022) (a court will not add words to the unambiguous language in RCW 38.40.060(1)).

The trial court properly granted summary judgment to the WSP and denied it to Trooper Werner.

II.     THE WSP'S ALLEGED FAILURE TO RECOGNIZE THE CLASS MEMBERS' RIGHT
        TO A BENEFIT DETERMINED BY SENIORITY

Trooper Werner next argues that the WSP violated her and other class members' rights under 38 U.S.C. § 4316(a), which provides:

> A person who is reemployed under this chapter is entitled to the *seniority and other rights and benefits determined by seniority* that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

(Emphasis added.)  According to Trooper Werner's briefing, the "right[ ] or benefit" at issue is statutory military leave under RCW 38.40.060.  Br. of Appellants at 26-38.  She claims to have demonstrated that it is arguably a reward for length of service.  *Id.* at

15

35-38. She characterizes RCW 38.40.060 as "provid[ing] a seniority-based benefit that accrues with longevity in employment." Br. of Appellants at 35.

Even if statutory military leave is a benefit determined by seniority, a claim for violating 38 U.S.C. § 4316(a) would require demonstrating that Trooper Werner and class members have, upon reemployment by the WSP, been denied the benefit. Like the trial court, we conclude that one reason the § 4316(a) claim fails is that, as already discussed, there is no evidence the benefit was denied. Because the parties focused their cross motions on whether statutory military leave is a "benefit[ ] determined by seniority" covered by the statute, we review that issue as well.

"Seniority" is a defined by USERRA to mean

> longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment.

38 U.S.C. § 4303(12). The United States Supreme Court held in *Alabama Power Co. v. Davis* that a right and benefit is seniority-based if the right (1) "would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer," and (2) if "it is in the nature of a reward for length of service." 431 U.S. 581, 589, 97 S. Ct. 2002, 52 L. Ed. 2d 595 (1977). While *Alabama Power* applied veterans' rights laws predating USERRA, the decision remains controlling. Congress emphasized when enacting USERRA that to the extent consistent with USERRA, the large body of case law that had developed under predecessor veterans' rights laws dating back to the

16

Selective Training and Services Act of 1940, Pub. L. No. 76-783, 54 Stat. 885,

"'remained in full force and effect.'" *Gross v. PPG Indus. Inc.*, 636 F.3d 884, 888

(7th Cir. 2011) (quoting 20 C.F.R. § 1002.2).

In the Supreme Court's first encounter with a predecessor of § 4316(a), it adopted

an escalator analogy that courts have consistently referred to as the "escalator principle,"[2]

stating that a veteran "'does not step back on the seniority escalator at the point he

stepped off'" to serve a tour of duty (or at that time, in a world war); instead, "'He steps

back on at the precise point he would have occupied had he kept his position

continuously during the war.'" *Alabama Power*, 431 U.S. at 584 (quoting *Fishgold v.*

*Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S. Ct. 1105, 90 L. Ed. 1230

(1946)).

In *Alabama Power*, the Supreme Court characterized one axis of analysis for

determining whether a benefit is a right of seniority as whether the benefit "is in the

nature of a reward for length of service," in which case "it is a 'perquisite of seniority,'"

or whether it "is in the nature of short-term compensation for services rendered," in

which case "it is not an aspect of seniority." *Id*. at 581, 589. The parties agree that it is

that axis of analysis that controls here. *See* Br. of Appellants at 34-35; Br. of Resp'ts at

---

[2] *E.g.*, *Tilton v. Missouri Pac. R. Co.*, 376 U.S. 169, 175, 84 S. Ct. 595, 11 L. Ed. 2d 590 (1964); *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1108 (9th Cir. 2017); *DeLee v. City of Plymouth, Ind.*, 773 F.3d 172, 175 (7th Cir. 2014).

17

19 n.2 (agreeing that the second axis, "reasonable certainty the benefit would have accrued," is satisfied).

Trooper Werner does not present evidence that supports her argument that statutory military leave is a seniority-based benefit that accrues with longevity in employment. There is no vesting period. *Cf. Alabama Power*, 431 U.S. at 593 (citing the lengthy vesting period as the "most significant factor" pointing to pension benefits being a reward for length of service). RCW 38.40.060 applies to employees regardless of the length of their employment. *Cf. Coffy v. Republic Steel Corp.*, 447 U.S. 191, 198, 205, 100 S. Ct. 2100, 65 L. Ed. 2d 53 (1980) (length of employment affected supplemental unemployment benefits in three ways: a two years' continuous service requirement, the benefit was based in part on the number of credit units accrued, and it was based on hourly wage achieved). Statutory military leave can be used only for military service or training, and expires annually if unused. *Cf. Moss v. United Airlines*, 20 F.4th 375, 387, (7th Cir. 2021) (fact that sick leave could not be used to augment an employment transition or extend a vacation made it compensation-like, not reward-like). Statutory military leave is just as available to a trooper who leaves the WSP for other public employment in Washington as it is to a trooper who continues in employment with the WSP.

Trooper Werner argues, however, that military leave is "forward looking" because it provides an incentive for becoming employed by the WSP. Reply Br. of Appellants at 3. But providing added compensation for services rendered (beyond wages) is also an incentive for becoming employed. The incentivizing nature of military leave does not answer the question whether it is a benefit determined by seniority. If "forward looking" means only that a benefit is an incentive to becoming employed, then offering additional compensation for services rendered and offering rewards for length of service are *both* forward-looking.

Trooper Werner also argues that statutory military leave is not compensation for services rendered because it is not based on days and hours worked. What is critical for the trooper to demonstrate, however, is that the "benefit[ is] determined by seniority," not that it may lack some attributes of compensation for services. 38 U.S.C. § 4316(a). This is especially so because this was a legislatively-adopted benefit, not an employer-adopted one.[3] The terms on which it is available might have been motivated in whole or in part by state concerns unrelated to rewarding longevity or compensating service.

---

[3] The case law cited by both parties all involves rights and benefits conferred by an employer, and the courts analyze features of the benefits with a view to whether *the employer* was motivated by an intent to further compensate service or reward length of service. Neither party analyzes whether 38 U.S.C. § 4316(a) can or should apply to a legislatively-conferred benefit that might have been motivated by other state concerns. For example, RCW 38.40.060 was enacted in 1939 and was made effective immediately as "necessary for the immediate preservation of the peace, health and safety of [s]tate . . .

19

The 38 U.S.C. § 4316(a) claim fails for the additional reason that Trooper Werner fails to demonstrate any facts supporting statutory military pay being a benefit determined by seniority. Here again, the trial court properly granted summary judgment to the WSP and denied it to Trooper Werner.

III. AFFIRMANCE OF THE SUMMARY JUDGMENT RULINGS COMPELS AFFIRMANCE OF DENIAL OF THE MOTION TO SUBSTITUTE TROOPER WERNER AS CLASS REPRESENTATIVE

Trooper Werner's remaining assignment of error is the denial of the motion to substitute her as class representative.

It is a requirement of a class action that the claims or defenses of the representative parties are typical of the claims or defenses of the class. CR 23(a)(3). The burden of demonstrating that the requirements of CR 23 are satisfied is borne by the plaintiffs seeking class certification. *Miller v. Farmer Bros. Co.*, 115 Wn. App. 815, 820, 64 P.3d 49 (2003). CR 23(c) provides that orders on whether a class action will be maintained are "conditional, and may be altered or amended before the decision on the merits." CR 23(c)(1). Accordingly, it was appropriate for Trooper Werner and class counsel to seek to substitute her for the eight earlier-appointed representatives who they conceded have no claims under 38 U.S.C. § 4316(a) and (d). Appellate review of a trial court's decision regarding class certification, including a motion to substitute the class

and for the support of the state government and its existing institutions." LAWS OF 1939, ch. 113, § 2.

20

No. 38332-6-III
*Martin, et al. v. State of Washington, et al.*

representative, is for a manifest abuse of discretion. *Elter v. United Servs. Auto. Ass'n*, 17 Wn. App. 2d 643, 654, 487 P.3d 539 (2021); *Dunlap v. Rauch*, 24 Wash. 620, 625, 64 P. 807 (1901).

As earlier observed, the continuing viability of the class action depended on Trooper Werner's ability to demonstrate claims for violations of 38 U.S.C. § 4316(a) and (d). She demonstrated neither. A party who lacks standing herself cannot represent a class of which she is not a party. *Johnston*, 85 Wn.2d at 645.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.