**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DALE HUHMANN, an individual,
    *Plaintiff-Appellee*,

v.

FEDERAL EXPRESS CORPORATION,
DBA FedEx Express, a Delaware
corporation,
    *Defendant-Appellant*.

No. 15-56744

D.C. No.
3:13-cv-00787-
BAS-NLS

OPINION

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted June 6, 2017
Pasadena, California

Filed November 2, 2017

Before: Carlos T. Bea and Andrew D. Hurwitz, Circuit
Judges, and J. Frederick Motz,[*] District Judge.

Opinion by Judge Bea

---

   [*] The Honorable J. Frederick Motz, United States District Judge for
the District of Maryland, sitting by designation.

## SUMMARY**

### Labor Law

The panel affirmed the district court's judgment, after a bench trial, in favor of the plaintiff, who alleged that upon his return from military service, he was entitled to a higher signing bonus from his employer under the Uniformed Services Employment and Reemployment Rights Act.

The panel held that arbitration was not required because the right awarded by USERRA neither arose out of nor relied on an interpretation of the parties' collective bargaining agreement, and so the parties' dispute was not a "minor dispute" under the Railway Labor Act.

The panel held that in analyzing the plaintiff's USERRA claim, the district court correctly considered first, whether the plaintiff had established that his military service was a "substantial or motivating factor" to cause an adverse employment action, and second, whether the defendant employer had established an affirmative defense that it would have taken the same action without regard to the military service. The panel held that the district court properly used the reasonable certainty test, asking whether it was reasonably certain that the plaintiff would have qualified for a higher bonus had he not left for military service, as an aid to the burden-shifting analysis. The district court also properly relied on the escalator principle, which provides that a returning service member should not be removed from

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the progress of his career trajectory. The panel concluded that the district court did not clearly err in finding that the plaintiff was reasonably certain to have achieved the higher bonus status had he not left for his military service, both as a matter of hindsight and as a matter of foresight. The panel also affirmed the district court's conclusion that the bonus was, in part, a seniority-based benefit, and the plaintiff's claim was not barred by 38 U.S.C. § 4316(b)(1).

## COUNSEL

Jane M. Flynn (argued), Federal Express Corporation, Irvine, California, for Defendant-Appellant.

Brian J. Lawler (argued), Pilot Law P.C., San Diego, California, for Plaintiff-Appellee.

## OPINION

BEA, Circuit Judge:

We are called upon to decide to what benefits a returning service member is entitled when resuming a civilian career. The Uniformed Services Employment and Reemployment Rights Act (USERRA) guarantees that an individual who departs for military service shall not be denied any "benefit of employment" due to that service. 38 U.S.C. § 4311(a). Dale Huhmann argues that, when he returned from service in the United States Air Force, FedEx Express (FedEx) improperly paid him a $7,400 bonus instead of the $17,700 bonus he would have earned had he not served. For the reasons that follow, the district court's decision which

awarded Huhmann the higher signing bonus, in addition to attorney's fees, is affirmed.

I.

Dale Huhmann was commissioned as an officer in the United States Air Force Reserve in 1985 and retired in 2006. Huhmann was hired by FedEx in 2001 to pilot a Boeing 727 aircraft, a "narrow body" aircraft for pay grade purposes. Pay grade at FedEx is in part determined by the aircraft the pilot flies and the role the pilot has in flying it. Huhmann was later selected by FedEx for training to be a first officer on a McDonnell Douglas MD-11 aircraft, a "wide-body" aircraft that would qualify him for a higher pay grade. That training was to begin on February 19, 2003. However, on February 7, 2003, Huhmann was mobilized for active Air Force duty. He was deployed overseas until August 31, 2006.

After completing his military service, Huhmann returned to active pay status at FedEx payroll on December 1, 2006. Upon his return, Huhmann was given the option to continue to work as a second officer on the narrow-body 727 aircraft (727-SO) or to receive training for one of ten other open positions. He chose to enter training to become a first officer on the wide-body MD-11 (MD-11-FO), as he had been selected by FedEx to do prior to his Air Force mobilization.

Huhmann's MD-11-FO training began on December 4, 2006, virtually immediately after his return to FedEx. Training consisted of ground school sessions on the MD-11 and its systems, training in flight simulators, and flying an MD-11 aircraft with a flight instructor. The final step was a validation flight or "check ride" during which an instructor carefully observed the candidate's performance flying the MD-11 before later approving or rejecting his certification. Some pilots who enter the MD-11-FO training program are

unable to complete it. Huhmann did not fail any evaluation step during his training and was activated as an MD-11-FO on February 22, 2007.

Huhmann is a member of the bargaining unit represented by the Air Line Pilots Association (ALPA). On August 26, 2006, while Huhmann was still on air force active duty, FedEx issued a letter to ALPA (the Bonus Letter) that offered a signing bonus to FedEx crewmembers if the union ratified a proposed collective bargaining agreement (CBA) then being negotiated. This Bonus Letter explained that pilots employed by FedEx on the day the CBA was signed (including those on military leave) who had been on active pay status on FedEx's payroll during the entire "amendable period" (from June 1, 2004 until the day the CBA was signed, which occurred on October 30, 2006) would receive the full signing bonus applicable to their pay grade.

The Bonus Letter specified that military leave would be deemed equivalent to active pay status on FedEx's payroll during the amendable period for purposes of qualifying for the signing bonus. Pilots on military leave would receive their signing bonuses upon returning to employment with FedEx. The Bonus Letter also specified that a pilot's signing bonus pay grade would be determined by the highest crew status the pilot held during the amendable period. The signing bonus for a 727-SO was $7,400, while that for an MD-11-FO was $17,700.

Upon Huhmann's return to FedEx, he was paid $7,400 as a signing bonus. He then filed this suit against FedEx. The operative first amended complaint alleged that FedEx had violated the Uniformed Services Employment and Reemployment Rights Act (USERRA) (38 U.S.C. §§ 4301–4335) when it failed to pay him the signing bonus owed to

an MD-11-FO,[1] which Huhmann contended he would have been awarded had he not left for military duty. After a bench trial, the district court entered judgment for Huhmann.

An employee making a claim under § 4311(a) "first has the burden of showing, by a preponderance of the evidence, that his or her protected status was a substantial or motivating factor in the adverse employment action; the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) (internal quotation marks and citation omitted). The district court found that Huhmann's military leave was a substantial factor in Huhmann's receipt of the smaller signing bonus, and determined that FedEx could not demonstrate that it would have denied Huhmann the higher signing bonus absent Huhmann's military leave.

In performing this analysis, the district court relied on two intersecting doctrines – the "escalator principle" and the "reasonable certainty test" – used to determine the status or position to which a returning service member is entitled. *See* 20 C.F.R. § 1002.2; *Rivera-Melendez v. Pfizer Pharm., LLC*, 730 F.3d 49, 54 (1st Cir. 2013). The "escalator principle" provides that a returning service member not be removed from the progress ("escalator") of his career trajectory, but rather return to a "position of employment in which the person would have been employed if the continuous

---

[1] In March 2010, Huhmann had filed a complaint with the Department of Labor Veterans' Employment and Training office (DOL-VETS) regarding his reduced signing bonus. DOL-VETS issued a letter to FedEx asserting that the company had violated USERRA (and 20 C.F.R. § 1002.193) and that Huhmann was entitled to the difference between the 727-SO and MD-11-FO bonus levels plus interest.

employment of such person with the employer had not been interrupted by such service." 38 U.S.C. § 4313(a)(2)(A). The "reasonable certainty test" aids in determining the returning service member's position on the "escalator," inquiring into the position a returning service member would have been "reasonably certain" to have attained absent the military service. 20 C.F.R. § 1002.191.

Courts applying the "reasonable certainty test" use both a forward-looking and a backward-looking approach. First, the court determines whether it appears, as a matter of foresight, that individuals like a given claimant who successfully completed training would have obtained a certain position had employment not been interrupted by military service. The court next analyzes whether, as a matter of hindsight, a particular claimant either has, or would have, completed the necessary prerequisites for a position. *See Tilton v. Mo. Pac. R.R. Co.*, 376 U.S. 169, 181 (1964) ("This requirement is met if, as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur."); *see also Pomrening v. United Air Lines, Inc.*, 448 F.2d 609, 613 (7th Cir. 1971) ("First, it must appear, as a matter of foresight, that pilot trainees who successfully completed United's training course were regularly advanced to flight officer status. Second, it must appear, as a matter of hindsight, that Pomrening would have probably completed his training in the normal course had it not been interrupted by his military service."). The reasonable certainty test applies to discretionary promotions. *See* 70 Fed. Reg. 75,246, 75,271 (Dec. 19, 2005), available at 2005 WL 3451172.

Together, the escalator and reasonable certainty principles guarantee that progress in the returning service

member's overall career trajectory has not been set back by his service. Applying these principles, the district court found that Huhmann would have been entitled to the higher bonus. The court found that it was reasonably certain that Huhmann would have become an MD-11-FO pilot prior to October 30, 2006 (the date the CBA was signed) and therefore would have been owed the bonus accorded to that higher status. The court found that the "process to qualify as [an MD-11-FO] is not an easy one, requires passing difficult exams at each stage of training, and some trainee pilots fail, trainees are given multiple opportunities to pass, and each pilot who passes qualifies as [an MD-11-FO]." But, the court noted, Huhmann did, in fact, pass all of the required tests, completed his training in approximately three months, and became employed as an MD-11-FO. It therefore determined that Huhmann was owed the higher signing bonus, along with attorney's fees and litigation costs.

FedEx timely appealed.

## II.

The district court's findings of fact after a bench trial are reviewed for clear error, and its conclusions of law are reviewed de novo. *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011).

## III.

FedEx makes four arguments on appeal. We address each in turn.

## III.A

FedEx first argues that this case should have been decided by an arbitrator. FedEx is an air carrier subject to the

Railway Labor Act (RLA), which mandates arbitration of "minor disputes," including disputes over the meaning of language within a collective bargaining agreement. 45 U.S.C. § 153; *see Wolfe v. BNSF Ry. Co.*, 749 F.3d 859, 863 n.1 (9th Cir. 2014); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994). FedEx argues that because the Bonus Letter was treated as part of the CBA by FedEx and ALPA and because analyzing the Bonus Letter is necessary to adjudicate Huhmann's rights, Huhmann's claim was a minor dispute. FedEx is incorrect, because the right awarded by USERRA neither arises out of the CBA nor relies on an interpretation of it.[2]

The Supreme Court has explained "that the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA . . . . '[M]inor disputes' subject to RLA arbitration are those that involve duties and rights created or defined by the CBA." *Hawaiian Airlines, Inc.*, 512 U.S. at 256–58 (citation omitted). Interpreting *Norris*, our court recognized that "[a] claim is preempted by the RLA only when the…claim involves duties and rights created or defined by a CBA and is therefore dependent on the interpretation of a CBA…In contrast, a…cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the CBA." *Wolfe*, 749 F.3d at 863–64 (internal quotation marks and citation omitted).[3]

---

[2] FedEx's motion for the court to grant judicial notice of the 2006 Collective Bargaining Agreement is **GRANTED**.

[3] *See also Espinal v. Nw. Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996) ("Where a plaintiff contends that an employer's actions violated rights protected by the CBA, there is a minor dispute subject to RLA preemption…By contrast, where a plaintiff contends that an employer's

The basis on which Huhmann made his claim was the independent legal right under USERRA to be returned to the position and status at FedEx he would have enjoyed had he not left for military service. By statute – and not by either the language of the CBA or its interpretation – FedEx is not allowed to use Huhmann's failure to qualify for MD-11-FO status to justify paying him a lower bonus if that failure to qualify was due to Huhmann's military service. The meaning of the Bonus Letter – and the attendant bonuses owed to individuals based on their status at the time of the signing of the CBA – is not in dispute. The only question is whether the undisputed terms of the Bonus Letter do not respect the independent rights granted to Huhmann under USERRA, as the Bonus Letter does not properly account for the status owed to an individual who has left for military service; i.e., it does not account for situations like Huhmann's, where but-for a military leave, he would have attained a qualification which mandated a higher bonus. Even assuming the Bonus Letter is part of the CBA, since the terms of the Bonus Letter do not require interpretation, the right Huhmann seeks to vindicate is based solely on the USERRA statute. The dispute is not a minor dispute under the RLA.

## III.B

On the merits, FedEx asserts that the district court did not actually apply the required burden-shifting analysis to Huhmann's Section 4311(a) claim, but instead utilized the reasonable certainty and escalator principles, which FedEx

---

actions violated a state-law obligation, wholly independent of its obligations under the CBA, there is no preemption. The RLA will preempt a state law claim, only if it 'is dependent on the interpretation of a [CBA].'") (citation omitted).

argues apply only to claims regarding reemployment under Section 4312. FedEx is incorrect.

Section 4311(a) claims require a two-step analysis: first, the claimant must show by a preponderance of the evidence that his or her military service was a "substantial or motivating factor" to cause an adverse employment action; second, assuming the claimant has done so, the employer may avoid liability only by putting forward an affirmative defense that it would have taken the same action without regard to the military service. *See Wallace*, 479 F.3d at 624. Despite FedEx's assertions to the contrary, the district court applied this two-step framework. First, at step one, the district court determined that Huhmann's military service was the cause of the "adverse employment action"; namely, his receipt of the smaller bonus owed to a 727-SO, rather than the higher bonus of an MD-11-FO. But to determine whether Huhmann was, in fact, due the higher bonus of an MD-11-FO, the district court utilized the reasonable certainty test. It determined that since it was reasonably certain that Huhmann would have been an MD-11-FO had he not left for military service, and since in fact FedEx did not accord Huhmann the status of an MD-11-FO upon his immediate return from service, Huhmann's departure for military service was a substantial factor in FedEx's failure to pay the higher bonus. At step two, the district court found that FedEx had offered no affirmative defense that it would have taken the same action of paying Huhmann a lower bonus absent Huhmann's military service. The reasonable certainty test, then, was used as an aid to the burden-shifting analysis required of a Section 4311(a) claim, not as its replacement.

FedEx's argument that the escalator principle and reasonable certainty tests are "not applicable to

discrimination claims" under Section 4311(a) fails. FedEx accurately notes that the reasonable certainty test and the escalator principle were first articulated by the Supreme Court in cases that interpret the pre-cursor legislation to 38 U.S.C. §§ 4312–13 of USERRA, which sections define a returning service-member's reemployment rights after military service.[4] But FedEx points to no language in Section 4312 or Section 4313 which indicates that the reasonable certainty test and escalator principle are available exclusively for analysis of claims under those statutes. Neither does FedEx point to any binding, or even persuasive, authority which shows that the reasonable certainty test and escalator principle may never be applicable to Section 4311 claims.

Indeed, Section 4311 indicates that the reasonable certainty test is entirely apt for the analysis of certain claims brought under that statute, as the rights guaranteed by Section 4311 include rights associated with reemployment, the analysis of which may necessitate the use of the reasonable certainty test.

Section 4311(a) states as follows:

---

[4] USERRA's immediate predecessor was the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. §§ 2021–2027, later recodified at 38 U.S.C. §§ 4301–4307 and commonly referred to as the Veterans' Reemployment Rights Act (VRRA). The VRRA was amended and recodified as USERRA. *See* 70 Fed. Reg. 75,246–01, 75,246. The rights that Congress sought to clarify in enacting USERRA were first contained in the Selective Training and Service Act of 1940, 50 U.S.C. § 301 et seq. *See* 70 Fed. Reg. at 75,246. *See also Rivera-Melendez*, 730 F.3d at 56–58 (1st Cir. 2013) (discussing Supreme Court case law interpreting a predecessor statute).

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, *reemployment*, retention in employment, promotion, or *any benefit of employment* by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a) (emphasis added). The definitions section of USERRA explains that a "benefit of employment" includes "any advantage, profit, privilege, gain, status, account, or interest…that accrues by reason of an employment contract or agreement…and includes…bonuses." 38 U.S.C. § 4303(2).

The plain language of USERRA thus specifies that Huhmann was not to be denied a "benefit of employment" or "reemployment," which benefit includes "bonuses." The Code of Federal Regulations, incorporating the reasonable certainty test and explaining the escalator principle, instructs that "[a]s a general rule, the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service. This position is known as the escalator position." 20 C.F.R. § 1002.191.

Given the circumstances of Huhmann's reemployment with FedEx, the district court's analysis made sense. It analyzed whether Huhmann's "benefit of employment" – the higher bonus due to an MD-11-FO, due upon his reemployment with FedEx – was properly denied, and whether that denial was on account of Huhmann's military

service. Since Huhmann's bonus was based on his job position, and since FedEx was required to reemploy him in the "job position that he…would have attained with reasonable certainty," 20 CFR § 1002.191, had he not deployed, the district court's only recourse was to use the reasonable certainty test to consider whether it was "reasonably certain" Huhmann would have attained the MD-11-FO status had he not left to serve in the Air Force, and therefore was due the higher bonus.

In other words, the district court's utilization of the reasonable certainty test not only comported with Section 4311's guarantee that Huhmann not be denied "benefits of employment," but also made a good deal of practical sense. If it was not reasonably certain that Huhmann would have successfully completed the MD-11-FO training in 2003 and therefore would have been in line for the higher bonus, it would be unreasonable to conclude that Huhmann had been denied a benefit of employment at all, much less to conclude that Huhmann's military service was a "substantial factor" in FedEx's failure to pay the higher signing bonus. Without evaluating the likelihood of Huhmann's passing the training and achieving certification as an MD-11-FO, the district court would have been unable to evaluate Huhmann's prima facie case under Section 4311, or otherwise to determine to which reemployment rights and benefits Huhmann was entitled.

### III.C

FedEx next argues that even if the reasonable certainty test is relevant to a Section 4311 claim, the district court erred in its factual determination that Huhmann satisfied the test. We find that the district court did not clearly err when it determined that Huhmann was reasonably certain to have

achieved the MD-11-FO status had he not left for his military service.

In *Tilton v. Missouri Pacific Railroad Co.* the Supreme Court defined a two-part framework for applying the reasonable certainty test:

> [W]e conclude that Congress intended a reemployed veteran who, upon returning from military service, satisfactorily completes his interrupted training, to enjoy the seniority status which he would have acquired by virtue of continued employment but for his absence in military service. This requirement is met if, as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur.

376 U.S. at 181. FedEx concedes that Huhmann satisfied the hindsight prong of this test because he successfully completed training as a MD-11-FO after returning from military leave.  But FedEx asserts that Huhmann "cannot satisfy [the foresight prong] as advancement to an MD-11 First Officer crew position was not based on the mere passage of time," but rather on skill, ability, and the discretion of the flight instructors. FedEx notes that the Supreme Court has held that the reasonable certainty test was not satisfied when promotion depended "not simply on seniority or some other form of automatic progression . . . . [But] is dependent on fitness and ability and the exercise of a discriminating managerial choice." *McKinney v. Mo. Kan. Tex. R.R. Co.*, 357 U.S. 265, 272 (1958).

It is undisputed that Huhmann had been accepted into the MD-11-FO training program before being called up for

military service. This suggests that his promotion turned on whether he would successfully complete the training program.  While it is true that some pilots fail the MD-11-FO training program, that fact alone is not sufficient to render the district court's conclusion that Huhmann was reasonably certain to have passed the training (as a matter of foresight) clearly erroneous: the relevant standard is "reasonable certainty" not "absolute certainty."[5]    Given Huhmann's diverse and long experience as a military and civilian pilot, his past job performance, the multiple opportunities given to candidates in MD-11-FO training to pass modules they initially fail, and the fact that he was accepted into and scheduled to begin this training before being mobilized, the district court's conclusion that Huhmann was reasonably certain as a matter of foresight to complete successfully MD-11-FO training was cogent and logical. At the very least, the district court's conclusion on this point was not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record."

---

[5] "It would be virtually impossible for a veteran to show, as the Court of Appeals would require, that it was absolutely certain, 'as a matter of foresight' when he entered military service, that all circumstances essential to obtaining an advancement in status would later occur. To exact such certainty as a condition for insuring a veteran's seniority rights would render these statutorily protected rights without real meaning. As Benjamin Franklin observed, 'In this world nothing is certain but death and taxes.' In every veteran seniority case the possibility exists that work of the particular type might not have been available; that the veteran would not have worked satisfactorily during the period of his absence; that he might not have elected to accept the higher position; or that sickness might have prevented him from continuing his employment. In light of the purpose and history of this statute, however, we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights." *Tilton*, 376 U.S. at 180-81.

*United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009).

### III.D

Finally, FedEx argues that in light of 38 U.S.C. § 4316(b)(1),[6] which limits non-seniority based benefits under USERRA to those benefits available to other employees on non-military leave, the district court erred by not deciding if the signing bonus was a seniority-based benefit. FedEx argues that the amount of the signing bonus paid to Huhmann was not a seniority-based benefit, but rather determined based on crew position without regard to employee seniority, such that a longer-tenured 727-SO would receive a smaller bonus than a shorter-tenured MD-11-FO. However, the district court correctly concluded that Huhmann's bonus was, in part, a seniority-based benefit, as

---

[6] 38 U.S.C. § 4316(b)(1) reads:

(b)(1) Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be–

(A) deemed to be on furlough or leave of absence while performing such service; and

(B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

it was awarded to him on the basis of his "longevity in employment" across the amendable period.

Section 4303(12) defines "seniority" as "longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment." The text of the statute does not specify that a benefit can be seniority-based only if the *sole* element that determines its size is the number of years an employee worked for an employer.

Although other factors such as a pilot's pay grade in part defined the amount of the signing bonus, the amount of the signing bonus was also in part determined by "longevity in service" over the amendable period, as a pilot who was employed by FedEx for only part of the amendable period would receive only a pro-rated portion of the bonus. The Bonus Letter explains that "pilots who were hired during the amendable period and pilots who were in an inactive pay status due to leave of absence or disability" would receive a prorated signing bonus, and that "[w]hen proration is called for, it will be based on the number of months a pilot was in an active pay status during the amendable period divided by 29. For purposes of the proration, a month will count if the pilot was active for at least half of the calendar month." Thus, had Huhmann not been either on military leave or in active service during the *entire* amendable period, he would not have been due a full signing bonus. The bonus, therefore, was a "seniority-based benefit," as it depended in part on Huhmann's being "employed" over the amendable period.[7]

---

[7] The Bonus Letter makes clear that "[f]or purposes of the signing bonus calculation, period of military leave will be counted as active

Relevant Supreme Court precedent compels this conclusion. In *Alabama Power Co. v. Davis*, in finding that pension payments were a seniority-based benefit, the Court explained that a benefit is seniority-based if it "would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and if it is in the nature of a reward for length of service."**[8]** 431 U.S. 581, 589 (1977). The signing bonus at issue satisfies the first element of this test because, for the reasons discussed above, it was "reasonably certain" that Huhmann would have received the MD-11-FO signing bonus had he remained continuously employed by FedEx from 2003 until 2006. As to the second prong, the record in this case makes clear that the signing bonus was not compensation for work performed. Rather, because FedEx purposely chose to offer the full signing bonus only to those pilots with an amount of longevity with the company across the entire amendable period, it was in part a "reward for length of service." As with the pension payments at issue in *Alabama Power*, FedEx's signing bonus helped encourage experienced employees to support the proposed CBA and allow for FedEx to retain a stable and experienced pilot corps. 431 U.S. at 593–94.

Furthermore, even if the signing bonus were not a seniority-based benefit, Section 4316 still would not bar Huhmann's claim. The terms of FedEx's Bonus Letter itself credited time served in the military towards the amendable period, and declined to credit time on leave for other

---

service." Huhmann was on military leave for the entire amendable period.

**[8]** The USERRA regulations on this point largely mirror the decision in *Alabama Power*. 20 C.F.R. 1002.212.

purposes. Even assuming FedEx is correct that under Section 4316 it could have denied the signing bonus to pilots on military leave during the amendable period, because FedEx chose to extend such benefit as a right of employment, it was bound by the other provisions of USERRA (such as Sections 4311, 4312, and 4313) not to reduce the amount of this employment benefit on the basis of the pilot's absence from work on account of military service.[9]

## IV.

The district court properly found that Huhmann's claim was not subject to the RLA's mandatory arbitration provision, properly relied on the escalator principle and reasonable certainty test in evaluating Huhmann's prima facie case, and properly concluded that Section 4316 did not bar Huhmann's claim. The district court's finding that it was reasonably certain that Huhmann would have completed MD-11-FO training as a matter of foresight was not clearly erroneous.

**AFFIRMED.**

---

[9] The district court's finding that Section 4316 did not bar Huhmann's claim does not contradict the Fifth Circuit's decision in *Rogers v. City of San Antonio*, 392 F.3d 758 (5th Cir. 2004). In that case, the Fifth Circuit determined that lost straight-time pay, lost overtime opportunities, and missed upgrading opportunities were not seniority-based benefits. None of those benefits depended on a length of tenure. Nothing in *Rogers* or the statute implies that § 4316 grants an employer a right actively to discriminate against those who leave for military service when it comes to non-seniority based benefits that are otherwise guaranteed, explicitly, to those on military leave.