**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEON BELAUSTEGUI,
*Plaintiff-Appellant*,

v.

INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION; PACIFIC
MARITIME ASSOCIATION,
*Defendants-Appellees.*

No. 21-55434

D.C. No.
2:19-cv-09955-
FLA-AFM

OPINION

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted February 15, 2022
Pasadena, California

Filed June 7, 2022

Before: Daniel A. Bress and Patrick J. Bumatay, Circuit
Judges, and Roger T. Benitez,[*] District Judge.

Opinion by Judge Bress

---

[*] The Honorable Roger T. Benitez, United States District Judge for
the Southern District of California, sitting by designation.

**SUMMARY**[**]

**Employment Discrimination**

The panel vacated the district court's summary judgment in favor of defendants in an action brought under the Uniformed Services Employment and Reemployment Rights Act by a longshore worker who returned to employment following service in the U.S. Air Force, and remanded.

The plaintiff sought promotion to the position he claimed he likely would have attained had he not served in the military.

The panel held that certain hours credits and elevation in longshore worker status, as set forth in a collective bargaining agreement, qualified as "benefits of employment" under USERRA. The panel further held that, under the "escalator principle," the plaintiff could pursue a USERRA discrimination claim based on the defendants' alleged failure to reinstate him to the "Class B" position he was reasonably certain to have attained absent his military service.

The panel left to the district court to decide in the first instance whether a five-year statutory limitation based on the duration of the plaintiff's military service applied.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Derek T. Anderson (argued), Derek T. Anderson APC, San Diego, California, for Plaintiff-Appellant.

Thomas M. Peterson (argued), Morgan Lewis & Bockius LLP, San Francisco, California; Clifford D. Sethness, Morgan Lewis & Bockius LLP, Los Angeles, California; for Defendant-Appellee Pacific Maritime Association.

Lindsay R. Nicholas, Leonard Carder LLP, San Francisco, California, for Defendant-Appellee International Longshore and Warehouse Union.

**OPINION**

BRESS, Circuit Judge:

The plaintiff in this case left his job as an entry-level longshore worker to enlist in the U.S. Air Force. After nine years of active duty, he returned to work as a longshoreman and requested a promotion to the position he claims he likely would have attained had he not served in the military. When his request was denied, he filed suit alleging discrimination under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, *et seq.*, a federal law that, *inter alia*, protects servicemembers in their reemployment following service in the armed forces.

We are principally asked to decide whether the district court erred in concluding that the plaintiff did not demonstrate the denial of a benefit that USERRA protects, and, specifically, whether certain hours credits and elevation in longshore worker status, as set forth in a collective

bargaining agreement, qualify as "benefits of employment" under USERRA. We conclude that they do, and further hold that the plaintiff may pursue a USERRA discrimination claim based on the defendants' alleged failure to reinstate him to the position he was reasonably certain to have attained absent his military service.

The defendants argue that the plaintiff is still ineligible for USERRA's protections because his period of military service exceeded a five-year statutory limitation, to which they claim no exception applies. We leave that issue to the district court in the first instance. We vacate the district court's grant of summary judgment to the defendants and remand for proceedings consistent with this opinion.

I

The plaintiff, Leon Belaustegui, began working as a longshoreman at Port Hueneme, California in February 2000. His work at Port Hueneme was covered by a collective bargaining agreement (CBA) negotiated by the defendants, who are (1) the International Longshore and Warehouse Union (ILWU), the collective bargaining representative for all longshore workers in California, Oregon, and Washington; and (2) the Pacific Maritime Association (PMA), the collective bargaining representative for about fifty member companies operating out of ports in all three states.

The CBA created three primary classifications of longshore workers. "Casual" is the lowest, "Class B" the next-highest, and "Class A" the highest. Entry-level Casual workers receive only the work that is left after Class A and Class B workers have been assigned to shifts. Promotion to Class B status affords a longshore worker more job

opportunities, as well as vacation pay, holiday pay, and other benefits that Casual workers do not receive.

Casual workers advance to Class B status when the number of existing Class B workers is insufficient to fill the jobs at the ports. The order of promotion is determined by accumulated hours of paid work as a Casual worker, not by the number of days worked or years of experience. When a new Class B worker is needed, the Casual worker with the most accumulated hours advances to Class B status first.

Belaustegui spent the first few years of his longshoreman career as a Casual worker. In 2004, he voluntarily enlisted in the U.S. Air Force. Belaustegui initially enlisted for four years of active duty, to conclude in March 2008. But in November 2007, before his initial term of enlistment expired, he reenlisted for an additional four years and nine months. Whether this reenlistment was voluntary, or whether Belaustegui was ordered to reenlist by his superior officers, is disputed.

In October 2008, Belaustegui was deployed to Kuwait, where he served until about April 2009. In August 2012, Belaustegui reenlisted in the Air Force for an additional four years. But in April 2013, he requested and received early separation from the military. He was honorably discharged after just over nine years of continuous active duty.

Belaustegui returned to Port Hueneme that same month and requested reemployment and benefits as a longshore worker. The CBA contains provisions that implement USERRA's protections for servicemembers. Relevant here, the CBA provides that eligible longshore workers who leave to serve in the military are entitled to "*reinstatement* to the position, along with applicable benefits, [that] an employee would have held had s/he not taken Uniformed Services

Leave." "Reinstatement includes seniority and seniority-based benefits . . . that would have been attained had the employee remained continuously employed" instead of leaving for the military.

Because promotion to Class B status is based on hours worked, the CBA also sets out methods for attributing hours to servicemembers on military leave. Under the "rotational method," a servicemember is credited with eight hours of paid work if his or her dispatch number would have been called on a given day (Casual workers are called for available work sequentially based on their dispatch numbers). But if there are insufficient records to determine how many times the servicemember's number would have been called, the CBA employs the "peer method." Under the peer method, the Port Hueneme Casual worker with the most hours worked in a given payroll quarter is designated as the "peer," and the servicemember is credited with eight hours worked each time the peer worked.

When Belaustegui returned to Port Hueneme, he requested hours credit and a corresponding promotion to Class B status, which he claimed he would have received had he not enlisted in the Air Force. The local labor committee promptly reemployed Belaustegui but referred his request for hours credit to the coast-wide labor committee. More than two and a half years later, the coast-wide labor committee denied Belaustegui's request under the CBA's USERRA policy. The coast-wide labor committee concluded that Belaustegui was ineligible for the requested benefits because his period of military service exceeded five years and he did not fit any exceptions.[1]  As we discuss

---

[1] Contrary to Belaustegui's assertion, the coast-wide labor committee did not first agree he was entitled to hours credit and then

further below, providing protections only to servicemembers who were away in the military for no more than five years (subject to exceptions) is based on corresponding provisions in USERRA.

Belaustegui filed a union complaint asserting that he had been wrongfully denied Class B status and hours credit. He requested a hearing and an opportunity to present evidence establishing that the five-year limit did not apply to him. Specifically, Belaustegui maintained that he qualified for an exception to the five-year rule because he was allegedly ordered to reenlist in November 2007 and had not done so voluntarily. A PMA representative questioned whether Belaustegui had any documents showing that his November 2007 reenlistment was involuntary. Belaustegui explained that he had been orally ordered to reenlist and that he did not have additional documentation.

In November 2019, having received no further decision from the coast-wide labor committee, Belaustegui filed a complaint in federal court asserting a single claim of discrimination under 38 U.S.C. § 4311 against the PMA and ILWU. Belaustegui alleged that defendants had violated USERRA by denying him hours credit and Class B registration for time missed due to his military service.

The district court granted summary judgment to defendants, although it did so on purely legal grounds, concluding that Belaustegui had not alleged the denial of any "benefit of employment" under USERRA and that he could not invoke § 4311 to challenge defendants' decision not to

reverse course. Rather, the document Belaustegui relies on is merely the referral of his dispute to the coast-wide labor committee, not a decision by that committee.

reemploy him as a Class B worker. The district court did not reach whether Belaustegui was ineligible for USERRA benefits based on his length of service exceeding five years.

Belaustegui timely appealed. Our review is de novo. *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 713 (9th Cir. 2020).

II

USERRA was enacted in 1994 "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301(a)(1). USERRA is a successor statute to prior federal laws that also sought to protect the rights of servicemembers returning to civilian employment. *See Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1108 n.4 (9th Cir. 2017) (discussing predecessor statutes). Through USERRA, Congress endeavored to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (quotations omitted). As a law advancing the interests of veterans, USERRA is "liberally construed for the benefit of those who left private life to serve their country in its hour of great need." *Ziober v. BLB Res., Inc.*, 839 F.3d 814, 819 (9th Cir. 2016) (quoting *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)).

USERRA requires "the prompt reemployment" of eligible servicemembers upon the completion of their military service, and prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(2)–(3). USERRA also entitles eligible servicemembers to "reemployment rights and benefits." *Id.*

§ 4312(a). As relevant here, an eligible servicemember whose period of service exceeded 90 days is entitled to reemployment "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform." *Id.* § 4313(a)(2)(A). This position is known as the "escalator position." 20 C.F.R. § 1002.191. The idea behind this "escalator principle" is "that a returning service member not be removed from the progress ('escalator') of his career trajectory." *Huhmann*, 874 F.3d at 1105.

Implementing regulations employ a "reasonable certainty" test to determine the escalator position: that position is the one the returning servicemember "would have attained with reasonable certainty if not for the absence due to uniformed service." 20 C.F.R. § 1002.191. In addition to reemployment in the escalator position, the servicemember is "entitled to the seniority and other rights and benefits determined by seniority" that he or she would have attained but for the period of military service. 38 U.S.C. § 4316(a).

USERRA limits its coverage to returning servicemembers who meet several requirements. Relevant here, a servicemember is eligible for USERRA benefits only if "the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years." *Id.* § 4312(a)(2). But there are several exceptions to the five-year limit. In particular, there is an exception for servicemembers "ordered to or retained on active duty (other than for training) under any provision of law because of a war or national emergency declared by the

President or Congress, as determined by the Secretary concerned." *Id.* § 4312(c)(4)(B).

Belaustegui asserts a claim under 38 U.S.C. § 4311. This provision states that a servicemember "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." *Id.* § 4311(a). USERRA defines a "benefit of employment" as "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice." *Id.* § 4303(2).

We apply a two-part test to § 4311 discrimination claims. An employee "first has the burden of showing, by a preponderance of the evidence, that his or her protected status was a substantial or motivating factor in the adverse employment action; the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." *Huhmann*, 874 F.3d at 1105 (quoting *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007)).

Our decision in *Huhmann* is instructive for showing how USERRA's various protections work together in a § 4311 discrimination claim, and it also sets up our evaluation of Belaustegui's claim below. The plaintiff in *Huhmann* was a pilot who worked at Federal Express. *Id.* at 1104. He flew a narrow-body aircraft and was later selected by FedEx to train on a wide-body aircraft, which (if he successfully completed the training program) would entitle him to a higher pay scale. *Id.* Before the plaintiff could begin this training, however, he was deployed to active military

service.  *Id.*  While he was away, FedEx offered a signing bonus to its crewmembers if their union ratified a proposed CBA.  *Id.* at 1105.  The pilots on the narrow-body plane would receive a $7,400 bonus, but those who flew the wide-body would receive a $17,700 bonus.  *Id.*  FedEx specified that pilots who were on military leave when the CBA was signed would be covered, such that "military leave would be deemed equivalent to active pay status on FedEx's payroll" for purposes of receiving the bonus.  *Id.*

When Huhmann returned from military service, he was paid only the $7,400 bonus given to pilots of narrow-body aircraft.  *Id.*  Huhmann filed suit under USERRA, arguing that he was discriminated against because he should have received the $17,700 bonus due to pilots of wide-body aircraft, on the theory that if he had remained with FedEx, he would have successfully completed the wide-body training program and become a wide-body pilot.  *Id.*  The district court granted summary judgment to Huhmann, and we affirmed.  *Id.* at 1105–06.

As relevant here, we rejected FedEx's argument that "the escalator principle and reasonable certainty tests are 'not applicable to discrimination claims' under Section 4311(a)." *Id.* at 1108.   Although §§ 4312 and 4313 concern reemployment most directly, no statutory language or other authority "shows that the reasonable certainty test and escalator principle may never be applicable to Section 4311 claims."  *Id.*   Instead, "Section 4311 indicates that the reasonable certainty test is entirely apt for the analysis of certain claims brought under that statute, as the rights guaranteed by Section 4311 include rights associated with reemployment."  *Id.*

Applying this framework, we held that under the "plain language of USERRA," a bonus was a "benefit of

employment"; that the district court properly applied the reasonable certainty test and escalator principle; and that it was reasonably certain, based on Huhmann's pre- and post-military performance as a FedEx pilot, that he would have attained wide-body pilot status had he stayed at FedEx instead of leaving for the military. *Id.* at 1109. Accordingly, the plaintiff was entitled to the higher bonus under USERRA. With these basic principles set forth, we now turn to Belaustegui's claim.

### III

The district court concluded that Belaustegui's USERRA claim failed at the outset because he did not allege the denial of a protected benefit or a violation of the escalator principle. We conclude at *Huhmann*'s first step, however, that Class B status and the CBA's hours credit policy for military service are both benefits of employment under USERRA. We also hold that Belaustegui can maintain a § 4311 discrimination claim by asserting a violation of the escalator principle. Although defendants argue that Belaustegui is ineligible for USERRA protection because his length of service exceeded five years, that issue involves factual and legal questions that the district court has yet to address, but which it may resolve on remand.

### A

The district court first agreed with defendants that Belaustegui's USERRA claim did not even get out of the gates because Belaustegui had not demonstrated the denial of any "benefit of employment" under § 4311. The district court focused its analysis on whether the hours credits available to returning servicemembers constituted "benefits of employment." It determined that they did not, reasoning that those credits are available just to servicemembers,

whereas USERRA protects only employment benefits provided to both military and non-military employees. This analysis was mistaken.

How USERRA affects any given employer depends on how the employer structures its workplace, including how it determines who is promoted and when. Employers may thus adopt USERRA policies that govern how USERRA's guarantees will be applied to their employees. *See Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 176 (2d Cir. 2011) ("Wachovia's military leave policy . . . mirrors USERRA's statutory language."); *see also Huhmann*, 874 F.3d at 1105, 1112 (explaining how FedEx extended its bonus policy to servicemembers on leave).

In this case, the CBA's USERRA policy reflects the defendants' attempt to implement the statute's requirements, including the escalator principle. The CBA's policy states that when a local labor committee "receives a request for reinstatement or other benefits under USERRA, it shall first determine whether the individual is entitled to benefits under USERRA." The policy specifically provides that eligible longshore workers who leave to serve in the military are entitled to "*reinstatement* to the position, along with applicable benefits, [that] an employee would have held had s/he not taken Uniformed Services Leave." This is determined by "calculating an appropriate hours credit," using either the "rotational" or "peer" methods discussed above. Like the statute, the CBA's USERRA policy also limits eligibility to servicemembers whose cumulative military leave does not exceed five years, "with certain statutory exceptions, such as service required by a declared war or national emergency."

Belaustegui does not challenge the CBA's USERRA policy as non-compliant with USERRA, but argues that it

was improperly applied as to him.  He maintains that based on the CBA's hours credit calculation, he would have attained Class B status and its attendant benefits, and further maintains that the five-year service limit is no obstacle because he was ordered to remain on active duty for more than five years because of a war or national emergency. What Belaustegui ultimately wants here is promotion to Class B status, and that status is unquestionably a "benefit of employment" under USERRA.

"As in all statutory interpretation, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous."  *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1265 (9th Cir. 2021) (quotations and citations omitted); *see also Huhmann*, 874 F.3d at 1109 (looking to the "plain language of USERRA").  A "benefit of employment" is broadly defined to mean "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest . . . that accrues by reason of an employment contract or agreement or employer policy, plan, or practice."  38 U.S.C. § 4303(2).

Here, the plain language of § 4311(a) and § 4303(2)'s expansive definition of "benefit of employment" confirm that Class B status is a "benefit of employment."  And Class B status is indisputably available to non-servicemembers, so even if we were to accept defendants' blanket argument that a benefit must always be available to non-servicemembers to be protected by USERRA, Belaustegui could (and does) advance a § 4311 claim premised on the denial of Class B status.

Hours, meanwhile, are simply the metric by which the defendants determine longshore workers' elevation to Class B status.  And in that sense, hours credit for servicemembers

is just the CBA's mechanism for determining § 4313's required escalator position for a given servicemember. Indeed, as Belaustegui's counsel explained at oral argument, the hours credits have no other apparent significance for a longshoreman other than for purposes of promotion from a lower longshoreman status to a higher one.

But even the hours credits are properly regarded as a "benefit of employment" under USERRA's broad definition. A "benefit of employment" includes, among other things, "the terms, conditions, or privileges of employment," including any "advantage" or "gain" "that accrues by reason of an employment contract or agreement." 38 U.S.C. § 4303(2). The predominant purpose of the hours credit is to measure seniority, in that those who work more hours are eligible for promotion sooner. These credits easily qualify as "advantages" or "gains." And they arise from a CBA, which qualifies as "an employment contract or agreement" and sets "the terms, conditions, or privileges of employment."

Defendants have never suggested that the predominant purpose of the hours credit policy is anything other than the means by which defendants determine the escalator position. Indeed, the CBA refers to the hours credit methodologies as the means of "calculating an appropriate hours credit" to ensure "appropriate seniority crediting."

To the extent defendants suggest that some aspects of the hours credit policy are generous to longshoremen, that does not make it any less a "benefit of employment." We rejected a similar argument in *Huhmann*, where we explained:

> [E]ven if the signing bonus were not a
> seniority-based benefit, Section 4316 still
> would not bar Huhmann's claim. The terms

of FedEx's Bonus Letter itself credited time served in the military towards the amendable period, and declined to credit time on leave for other purposes. Even assuming FedEx is correct that under Section 4316 it could have denied the signing bonus to pilots on military leave during the amendable period, because FedEx chose to extend such benefits as a right of employment, it was bound by the provisions of USERRA (such as Sections 4311, 4312, and 4313) not to reduce the amount of this employment benefit on the basis of the pilot's absence from work on account of military service.

874 F.3d at 1112.

In this context, it is thus no answer, as defendants argue, that the hours credit is available only to servicemembers. That premise is flawed because hours credits are part of a collective bargaining agreement intended to implement USERRA's statutory requirements for reemployment. Under defendants' reasoning, when an employer adopts a policy to implement USERRA's guarantees, the policy's protections cannot be "benefits of employment" under § 4303(2) because they are available only to servicemembers. That logic is circular.

For these reasons, the district court erred in relying on *Crews v. City of Mount Vernon*, 567 F.3d 860 (7th Cir. 2009), and *Gross v. PPG Industries, Inc.*, 636 F.3d 884 (7th Cir. 2011). We have never adopted the Seventh Circuit's gloss on the statutory phrase "benefit of employment" in these cases, and we do not do so here. Even so, these cases

are distinguishable based on the nature of the employers' policies that were at issue.

*Crews* involved a "preferential" scheduling policy that the City of Mount Vernon, Illinois voluntarily instituted for police officers who also served in the National Guard. 567 F.3d at 862–63. After the policy became unwieldy, the City rescinded it. *Id.* The Seventh Circuit held that this did not violate USERRA. *Id.* at 862. It acknowledged that "[n]othing in the text of either § 4311(a) or § 4303(2) . . . indicates that § 4311 covers only those benefits extended generally to military and nonmilitary employees alike." *Id.* at 866. But it nonetheless held that "the better interpretation" of "benefit of employment" is that it refers to a benefit "provided to both military and nonmilitary employees." *Id.*

We question how the Seventh Circuit's gloss on "benefit of employment" is consistent with the statutory text. Although we do not endorse this language in *Crews*, it also must still be understood in context. The preferential scheduling policy in *Crews* had no basis in USERRA's requirements. *See* Kathryn Piscitelli & Edward Still, *The USERRA Manual: Uniformed Services Employment and Reemployment Rights* § 7.8 (2021) (explaining that the *Crews* decision is "best understood in the context of the factual scenario before the court in *Crews*—an employer's withdrawal of its unilaterally adopted policy conferring special scheduling benefits for servicemembers"). As the Seventh Circuit explained, "the Department's work scheduling policy for Guard employees was strictly voluntary, and Crews has not claimed that *any contract or other provision of law* required the defendants to maintain the policy." 567 F.3d at 867 (emphasis added); *see also id.* at 862 ("[N]othing in [USERRA] would have required the

City to establish the preferences in the first place."); *id.* at 867 ("The Department's recent decision to revoke those preferences and return to the 'floor' requirements, while understandably disappointing to Crews, does not violate USERRA.").

Here, by contrast, the hours credit policy implements USERRA's directive that an employee be reemployed "in the position of employment in which the person would have been employed" but for the period of military service. 38 U.S.C. § 4313(a)(2)(A). Belaustegui argues with some force that *Crews*'s interpretation of "benefit of employment" was too narrow under USERRA's plain text. We have no occasion to endorse that reasoning in *Crews*, which the Seventh Circuit in all events has thus far not extended to benefits grounded in USERRA's affirmative guarantees. *Crews* is therefore distinguishable on its facts.

*Gross* is similarly distinguishable because it involved a claimed benefit that was even further removed from Belaustegui's claims. In *Gross*, and in the aftermath of the September 11th attacks, an employer granted employees on military leave additional compensation in the form of "differential pay," which "exceed[ed] those benefits offered to its other employees generally." 636 F.3d at 886, 889. But even then, *Gross* found "no need to rely on *Crews*' 'equal benefits' holding to see that Gross's claim fails." *Id.* at 891. That was because the employee's § 4311 claim did not challenge the denial of the additional compensation, but merely the *method* by which the compensation was calculated. *Id.* at 890. And "Gross's proposed calculation was not guaranteed by the language of the [employer's] policy." *Id.* at 891. *Gross* explained that, regardless of whether a benefit of employment must be offered to non-military employees, the plaintiff's preferred method of

calculating his additional compensation was not a benefit provided to *any* employee. *Id.*

*Crews* and *Gross* do not suggest that when an employer creates a USERRA policy to implement USERRA's core reemployment guarantee, that such a policy cannot confer "benefits of employment" under USERRA. The policies at issue in *Crews* and *Gross* bear no resemblance to the hours credit policy in the CBA, which was based in USERRA's statutory guarantees and qualifies as a "benefit of employment" under USERRA's plain text. We therefore hold that in challenging the denial of Class B status and hours credits under the CBA, Belaustegui has demonstrated that he was denied "benefits of employment" under USERRA and may bring a § 4311 claim on that basis.

B

Belaustegui alternatively sought to invoke § 4311 to claim a violation of the escalator principle. The district court declined to resolve Belaustegui's argument that, regardless of whether the CBA's hours credit policy was a "benefit of employment," he was entitled to reemployment as a Class B worker under the escalator principle. The district court instead concluded that a violation of USERRA's escalator requirement could be pleaded only under § 4316, and Belaustegui had alleged only a violation of § 4311.

The district court erred in rejecting Belaustegui's escalator principle argument on this threshold ground. The district court reasoned that the escalator principle was first recognized as a requirement of one of USERRA's precursor statutes, then codified at 38 U.S.C. § 2021. The court concluded that because § 4316 is the successor to former § 2021, to allege a violation of the escalator requirement Belaustegui was required to plead a violation of § 4316.

That reasoning is not correct.  As we have explained, USERRA's escalator principle is also drawn from § 4313, which gives eligible servicemembers a right to reemployment "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted" by their service.  *Id.* § 4313(a)(2)(A); *see also* 20 C.F.R. § 1002.191.  The rights in § 4313 are available to servicemembers entitled to reemployment under § 4312. And § 4311 can be used to vindicate an escalator principle claim, as we held in *Huhmann*.  874 F.3d at 1108.

The district court's conclusion otherwise conflicts with *Huhmann*.  There we treated the USERRA claim as a § 4311 claim and squarely rejected "FedEx's argument that the escalator principle and reasonable certainty tests are 'not applicable to discrimination claims' under Section 4311(a)." *Id.* at 1105, 1108.  In particular, we explained that FedEx had identified "no language in Section 4312 or Section 4313 which indicates that the reasonable certainty test and escalator principle are available exclusively for analysis of claims under those statutes."  *Id.* at 1108.  *Huhmann* thus confirmed that an employee who was denied the benefit of the escalator position can state a § 4311 claim on that basis.

Here, Belaustegui's escalator position argument is ultimately just an alternative way of framing his fundamental § 4311 theory: that he was wrongfully denied the benefit of Class B status because of his military service.  The CBA's hours credit policy was defendants' built-in mechanism for complying with USERRA's reemployment requirements. Belaustegui's complaint broadly alleged that defendants discriminated against him under § 4311 by denying him "benefits related to his military service and related registration."  The complaint's allegations fairly encompass

an escalator principle theory.  Under *Huhmann*, Belaustegui was not required to plead a violation of any different section of USERRA in order to advance this claim.

We thus hold that through both the alleged violation of the escalator principle and the denial of a "benefit of employment," Belaustegui has demonstrated his initial entitlement to USERRA benefits.  And defendants have advanced no argument to suggest that it was not reasonably certain that Belaustegui, had he stayed at Port Hueneme, would not have achieved Class B status.

C

Nevertheless, defendants argue that Belaustegui falls outside the CBA's (and USERRA's) coverage because his military service exceeded five years and he does not satisfy any exception.  Belaustegui is entitled to USERRA benefits only if "the cumulative length of the absence and of all previous absences from a position of employment with [his] employer by reason of service in the uniformed services does not exceed five years," 38 U.S.C. § 4312(a)(2), subject to certain exceptions.  The CBA's USERRA policy also incorporates the statute's five-year limit and exceptions.  It is undisputed that Belaustegui's Air Force service exceeded five years.

But Belaustegui argues that he meets the exception for servicemembers who are "ordered to or retained on active duty (other than for training) under any provision of law because of a war or national emergency declared by the President or Congress, as determined by the Secretary concerned."  *Id.* § 4312(c)(4)(B).  The parties agree that, to meet this exception, Belaustegui is required to show that any service in excess of five years was because of—not merely during—a declared war or national emergency.  Belaustegui

appears to concede that voluntary reenlistment would not satisfy the exception.

Although the coast-wide labor committee denied Belaustegui's request for Class B status and hours credit on the ground that the § 4312(c)(4)(B) exception did not apply, the district court did not reach this issue. And the parties' briefing on appeal confirms that this issue requires resolution of additional factual issues, as well as some seemingly novel legal ones.

For instance, there is some question as to what amount of documentary evidence, if any, a servicemember must provide to meet the § 4312(c)(4)(B) exception. The parties also dispute whether the phrase "as determined by the Secretary concerned" requires a formal determination by (here) the Secretary of the Air Force or his delegee, or whether Belaustegui's deployment orders could suffice. The factual circumstances of Belaustegui's reenlistment in 2007 are also unclear. Belaustegui claims that he was verbally ordered to reenlist and that his service duties themselves indicate that he was ordered to active duty because of a declared war, but defendants maintain that Belaustegui voluntarily reenlisted and that he has no reliable evidence showing otherwise.

None of these issues were decided below, and we are "mindful that we are a court of review, not first view." *Shirk v. United States ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014) (quotations and citations omitted). We therefore remand this case for the district court to consider Belaustegui's claim that he is entitled to the § 4312(c)(4)(B) exception to the five-year limit, as well as Belaustegui's arguments regarding his California Air National Guard service. The district court may also consider under

*Huhmann*'s second step any affirmative defenses to USERRA liability that defendants may raise.

**VACATED and REMANDED.**