# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1064

DANIEL GEORGE,
Appellant

v.

PIEDMONT AIRLINES, INC.

_____

On Appeal from the U.S. District Court, E.D. Pa.
Chief Judge Mitchell S. Goldberg, No. 2:23-cv-03939

Before: SHWARTZ, BIBAS, and PHIPPS, *Circuit Judges*
Submitted: Mar. 3, 2026; Filed: May 5, 2026
_____

NONPRECEDENTIAL OPINION[*]

BIBAS, *Circuit Judge*. Some claims must be adjudicated out of court. Daniel George claims that his former employer, Piedmont Airlines, violated an anti-discrimination law. But because his claim depends on interpreting his collective-bargaining agreement, it must go to arbitration. So we will affirm the District Court's dismissal.

George was both a pilot for Piedmont Airlines and a Lieutenant Colonel in the U.S. Air Force Reserve. In the fall of 2019, he started a military leave of absence. Two years later, Piedmont and its pilots' union added a new bonus program to their collective-bargaining agreement. Under that program, if a pilot was hired by American Airlines (Piedmont's parent company) while still employed by Piedmont, he would get a $70,000 bonus in his last paycheck.

[*] This is not an opinion of the full Court and, under 3d Cir. IOP 5.7, is not binding precedent.

While still on military leave, George interviewed with and got a job offer from American. He told his Piedmont supervisor that he had the offer from American and planned to leave Piedmont; at first, his supervisor responded that he should get the bonus automatically. So George told Piedmont that he would resign in three weeks to start the new job. But the next day, his supervisor called back to say that his resignation would become effective immediately. Soon after, another Piedmont employee said he would not get the bonus.

George and his union filed a grievance under the collective-bargaining agreement, challenging Piedmont's denying him the bonus. Yet the arbitration panel rejected that grievance, reasoning that when American hired George, he was no longer a Piedmont employee.

Then George filed this lawsuit, alleging that Piedmont had violated the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) by denying him the bonus because of his military service. The District Court dismissed for lack of subject-matter jurisdiction, concluding that the Railway Labor Act required arbitrating his claim. *George v. Piedmont Airlines, Inc.*, 761 F. Supp. 3d 804, 807 (E.D. Pa. 2025). Reviewing de novo, we conclude that the Railway Labor Act does indeed prevent us from deciding the merits of George's claim. *Stouffer v. Union R.R.*, 85 F.4th 139, 143 (3d Cir. 2023).

Under the Railway Labor Act, "minor disputes" between labor and management in railroads and airlines must go to arbitration. *Id.* at 144. Minor disputes are ones involving rights created or defined by the parties' collective-bargaining agreement. When a claim "depends for its resolution on the interpretation of a CBA," the Railway Labor Act precludes bringing suit on that claim. *Id.* (internal quotation marks omitted). A claim depends on interpreting the agreement when it "may be conclusively resolved by" that

2

interpretation. *Id.* (internal quotation marks omitted). By contrast, "purely factual questions" about an employer's or employee's actions or motives do not require interpreting the agreement. *Id.* at 144–45 (internal quotation marks omitted). Claims raising such questions can normally be resolved in court. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261–62 (1994).

And under USERRA, employers may not discriminate against employees because of their military service. 38 U.S.C. § 4311(a), (c). They must also treat anyone "absent from a position of employment by reason of service in the uniformed services" as "on furlough or leave of absence while performing such service." § 4316 (b)(1)(A). These employees are "entitled to" the same non-seniority employment benefits that "are generally provided" to similar "employees … who are on furlough or leave of absence." § 4316(b)(1)(B). Plus, military service members who are "reemployed" under USERRA are "entitled" to the seniority-based benefits that they "would have attained if [they] had remained continuously employed." § 4316(a).

Though George tries to pit USERRA against the Railway Labor Act's arbitration requirement, the two are compatible in this case. USERRA's rights and benefits cannot be reduced by any state law or by contract. § 4302(b). But the Railway Labor Act set up a "comprehensive framework for resolving labor disputes." *Stouffer*, 85 F.4th at 143 (internal quotation marks omitted). And nothing in USERRA requires enforcing its protections by courts alone. *See, e.g.*, *Ziober v. BLB Res., Inc.*, 839 F.3d 814, 820 (9th Cir. 2016). Nor will we assume that arbitration cannot effectively vindicate federal rights. *See 14 Penn Plaza*

3

*LLC v. Pyett*, 556 U.S. 247, 265–69 (2009). So USERRA does not carve out an exception to the Railway Labor Act's arbitration requirement.

George claims that Piedmont violated USERRA by denying him the non-seniority-based bonus to which the collective-bargaining agreement entitled him. But USERRA does not define the bonus or its terms. Whether George was "employed" by Piedmont turns on how the agreement defined that term. App. 380. If George does not fall within its terms, then the collective-bargaining agreement does not entitle him to the bonus. USERRA might still require giving him the bonus anyway: If the term covers similarly situated workers on long-term leave or furlough, then George must be given the bonus, too. But if no one on long-term leave or furlough is included, then neither is George. Whether they are included is also a question of interpreting the terms of the agreement. Because George's claim may be conclusively resolved by interpreting the contract, it is not independent of the agreement.

To be sure, whether someone was "employed" might sometimes be a purely factual question that does not turn on the agreement's meaning. For instance, the parties might dispute only the date of the employee's hiring or firing. In that case, the Railway Labor Act would not require the plaintiff to arbitrate the dispute because it would not require interpreting a term of the agreement. *Norris*, 512 U.S. at 261. Not so here. The agreement is not just "relevant" to the dispute, but dispositive; peeking at the merits shows that George's claim "depends" on the meaning of the agreement's term "employed." *Stouffer*, 85 F.4th at 144 (internal quotation marks omitted) (first two quotations); App. 380 (third one).

Resisting this conclusion, George cites a Ninth Circuit precedent, but it is inapt. In that case, all parties agreed that the pilot deserved *a* bonus, but *which* bonus he got turned on

4

what his "crew status" was. *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1105 (9th Cir. 2017); *see also id.* at 1107. And the pilot's claim to a higher bonus was based not on any term in the agreement, but his "independent legal right under USERRA to be returned to the position and status at [the employer] [that] he would have enjoyed had he not left for military service." *Id.* at 1107. The court had to make only "factual determination[s]" about the employer's and employee's conduct and the nature of the bonus. *Id.* at 1109–11. So the employee did not have to arbitrate the dispute.

Because George's claim depends on interpreting the collective-bargaining agreement, we will AFFIRM the District Court's dismissal.